UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>           v.<br><br>APPROXIMATELY 523,507 BARRELS OF STRAIGHT RUN FUEL OIL FORMERLY ABOARD THE CRUDE OIL TANKER ABYSS WITH INTERNATIONAL MARITIME NUMBER 9157765,<br><br>                    Defendant. | Civil Action No. 23-2065<br><br>**FILED UNDER SEAL** |

### GOVERNMENT'S EMERGENCY MOTION FOR INTERLOCUTORY SALE

The United States of America, by and through undersigned counsel, hereby moves pursuant to Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules" or "Supp. R.") for an order authorizing the immediate interlocutory sale of property subject to forfeiture in this case, namely, all petroleum-product cargo formerly aboard the crude oil tanker Abyss, which bears International Maritime Organization ("IMO") number 9157765 ("Defendant Property"), in order to mitigate costs and preserve the value of the Defendant Property. In support of its motion, the Government respectfully states as follows:

**A.      Background**

1.      This *in rem* forfeiture action arises from an ongoing investigation by Homeland Security Investigations ("HSI") and the Federal Bureau of Investigation ("FBI") of the transportation and sale of Iranian petroleum products for the benefit of sanctioned Iranian entities,



RECEIVED
JUL 20 2023
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

including the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Quds Force ("IRGC-QF").

2. On July 3, 2023, this Court issued a warrant (Seizure No. 23-0018) to seize the Defendant Property.

3. The Defendant Property is presently on track to arrive into a port in the United States on or about July 31, 2023, weather and conditions permitting. *See* Attached Declaration.

4. Unless the United States is allowed to sell the Defendant Property, once in the United States, it will be placed in storage or will remain on the transit vessel if storage options are unavailable, pending resolution of the instant matter. If the Defendant Property must remain on the vessel due to the lack of storage options, it will cost the United States $55,000 per day in demurrage fees, starting 48 hours after arrival.

5. Daily storage costs for the Defendant Property will quickly offset the value of the Defendant Property. *See* Attached Declaration. Specifically:

    a. The Defendant Property has a current estimated value of between $25,000,000.00 and $35,000,000.00, depending on the quantity and quality of the petroleum and market fluctuations. *See id*.

    b. Daily storage costs for the Defendant Property, if available, is estimated to cost $44,000.00 per day or $1,320,000.00 per month. *See id*.

    c. Demurrage would present an economic cost of $1,100,000.00 if a sale is delayed by twenty days. *See id*.

**B.** **Request for Interlocutory Sale**

6. This Court has the authority to order the interlocutory sale of property subject to forfeiture due to excessive storage costs. Supplemental Rule G(7)(b)(i) provides that, "[o]n

motion by a party or a person having custody of the property, the court may order all or part of the property sold" if certain conditions are met.  Those conditions include where "the expense of keeping the property is excessive or is disproportionate to its fair market value," or "the court finds other good cause."  Supp. R. G(7)(b)(i)(B), (D).

7. If the Court approves interlocutory sale, the Supplemental Rules specify that the sale be made by a "United States agency that has authority to sell the property, by the agency's contractor, or by any person the court designates."  Supp. R. G(7)(b)(ii).  The sale proceeds will be deposited in an interest-bearing account pending conclusion of the forfeiture action.  Supp. R. G(7)(b)(iv).

8. The resulting sale proceeds are then treated as a "substitute res subject to forfeiture in place of the property that was sold" and can be used to satisfy any claims recognized by the Court.  Supp. R. G(7)(b)(iv).

9. Where the parties agree to the sale, the terms of the sale are such as the parties agree to.  Supp. R. G(7)(b)(iii).  However, where the parties do not agree, the terms of the sale are governed by the procedures set forth in 28 U.S.C. § 2001, *et seq.*, which allow for a sale "upon such terms and conditions as the court" directs or approves.  28 U.S.C. § 2001(a), (b).

10. The Government respectfully submits that there is good cause to proceed with an interlocutory sale of the Defendant Property.

11. Unless the Defendant Property is sold before it reaches the United States, the declarant expects at least twenty days of demurrage costs may occur, followed by possibly weeks of storage fees pending the resolution of the instant matter.

12. Additionally, the price of oil products is volatile, *see* Attached Declaration, and an interlocutory sale would preserve the current value of the Defendant Property.

13. Courts often approve the interlocutory sale of property subject to forfeiture to avoid ongoing storage costs or depreciation. *See, e.g., United States v. All Petroleum-Product Cargo Aboard the Bella*, Civ. A. 20-1791 (JEB), 2020 WL 3771953 (D.D.C. Sep. 1, 2020); *United States v. 2003 BMW X5 SUV*, Civ. A. No. 14-0912, 2015 WL 845661 (D. Md. Feb. 24, 2015); *United States v. One 2010 Dodge Ram*, Civ. A. No. 14-1065, 2015 WL 685208 (D. Md. Feb. 18, 2015).

14. Moreover, there is a zero-sum game between these storage expense and the amount of funds terror victims may recover. This alone is reason enough to order an interlocutory sale, which would avoid the accrual of storage costs. *See United States v. Real Prop. Located at 272 Old Montauk Highway*, 298 F.R.D. 43, 53 (E.D.N.Y. 2014) (interlocutory sale ordered in part to ensure that greatest amount of money possible would be available to victims).

15. This Court has "considerable discretion" in deciding a request for an interlocutory sale. *United States v. Any & All Funds in UBS AG*, 628 F. App'x 296, 297 (5th Cir. 2016) (quoting *United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009)).

16. Appellate courts have approved of such sales as long as the "sale procedures were fair and the government adequately publicized the sale." *UBS AG*, 628 F. App'x at 297.

17. Here, the Government seeks authority to solicit bids from approximately five selected interested purchasers, and if a reasonable offer is made, to promptly sell the Defendant Property, delivering title prior to reaching the United States, if possible. If no reasonable offer is received, the Government will continue with its plan to deliver the Defendant Property to the United States.

18. Given that petroleum products are commodities, their prices are set more by the market and less by negotiation (which would likely include adjustments for conditions of delivery such as date and location). Accordingly, by seeking to conduct a sale limited to a small number

of potential buyers, the United States will achieve substantially the same price as it would receive from an auction fully open to the public, thereby achieving the benefits of the public policy preference for a public sale while avoiding harmful interference caused by revealing the sale prematurely.

19. Further, because the Defendant Property is a commodity, little to no harm can befall potential claimants because it can be easily replaced on the open market with product of like quality and quantity. *See* Attached Declaration.

20. In order to avoid interference in the sale from potential malign actors and to maintain the security of the potential buyer, the Government requests that the instant motion be placed under seal.

21. The Government will provide notice to the public and all potential claimants upon this matter being unsealed.

*   *   *

WHEREFORE, the United States respectfully moves that the Court enter the attached Order granting its motion for interlocutory sale of the Defendant Property and further requests authorization to disclose that order to potential purchasers, regulators, and other persons and entities necessary for the United States to accomplish the interlocutory sale.

Dated: July 19, 2023
       Washington, D.C.

                          Respectfully submitted,

                          MATTHEW M. GRAVES
                          United States Attorney

                          By:       /s/ *Erika Oblea*
                                  BRIAN P. HUDAK
                                  KAREN P. W. SEIFERT
                                  MAEGHAN O. MIKORSKI
                                  RAJBIR DATTA
                                  ERIKA OBLEA
                                  Assistant United States Attorneys
                                  601 D Street, NW
                                  Washington, DC 20530
                                  (202) 252-7566 (main line)

                            *Attorneys for the United States of America*