UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>APPROXIMATELY 523,507 BARRELS OF STRAIGHT RUN FUEL OIL FORMERLY ABOARD THE CRUDE OIL TANKER ABYSS WITH INTERNATIONAL MARITIME NUMBER 9157765,<br><br>      Defendant. | Civil Action No. 23-2065<br><br>**FILED UNDER SEAL** |

## DECLARATION OF JENNIFER CRANE

I, Jennifer Crane, declare and state as follows:

1. My name is Jennifer Crane and I am Assistant Chief, Personal Property Unit, Asset Forfeiture Division, United States Marshals Service. I have been in this position for 14 years. My duties include supervision and oversight of forfeiture matters relating to the sale of personal property. I declare the matters stated herein based on personal knowledge.

2. As part of my official duties, I have overseen the management and sale of a wide variety of forfeited and pre-forfeiture assets.

3. From prior experience, I know that aircrafts, vessels, and cargos pose unique challenges in asset management. These assets have maintenance and storage costs that far outstrip standard assets. The larger assets in these categories are particularly challenging to maintain, as crews may need to be retained for around the clock servicing, and only limited locations can store such items.

4. For these reasons, among others, the Department of Justice's official position is that "[p]re-forfeiture sale of property (*i.e.,* interlocutory sale) is favored as a means of preserving asset value and mitigating asset expenses." *See* U.S. Department of Justice Asset Forfeiture Policy Manual, Chapter 10-2, available at https://www.justice.gov/criminal-afmls/file/839521/download.

5. I have managed numerous such sales for other assets and have found such sales to be an effective means of preserving the value of seized assets.

6. I have personally participated in the coordination and seizure of all of the captioned petroleum-product cargo ("Defendant Property") and will manage the logistics of any sale.

7. The Defendant Property is currently in transit to the United States.

8. The Defendant Property should arrive into a port in the United States by July 31, 2023, weather and conditions permitting.

9. Once in the United States, the Defendant Property will either be placed in storage or will remain on the transit vessel if storage options are unavailable, pending resolution of the instant matter.

10. I have been notified that storage containers for the Defendant Property may not be available due to an overall lack of available storage units. Storage on the transit vessel is thus a likely scenario, which will incur premium costs that may exceed the storage costs described below.

11. I have consulted, directly or through our contractors, with companies about the costs associated with storing and maintaining the Defendant Property. Such consultations have revealed that daily storage costs for the Defendant Property will quickly make a substantial dent in its value. Specifically:

a. The Defendant Property has a current estimated value between $25,000,000.00 and $35,000,000.00, depending on the quality of the petroleum and the frequently changing price for petroleum;

b. Daily storage costs for the Defendant Property, if available, is estimated to be approximately $44,000.00 per day or $1,320,000.00 per month; and

c. Demurrage would be an economic cost of approximately $1,100,000.00 to be incurred by the incoming transit vessels, for every 20 days of demurrage.

12. Market prices for commodity petroleum products are volatile, rising and falling based upon a multitude of factors affecting supply and demand, including geopolitical events, weather conditions, refinery capacity, transportation capacity, regulatory actions, etc.

13. I have consulted with an expert advising me about companies interested in purchasing the Defendant Property pursuant to an interlocutory sales order.

14. Based on this information and my prior experience in managing similar assets, I have concluded that an interlocutory sale is needed to preserve the value of the Defendant Property.

15. The government will solicit bids from specifically identified interested purchasers, and if a reasonable offer is made, to promptly sell the Defendant Property, delivering title prior to reaching the United States, if possible. If no reasonable offer is received, the government will continue on with its plan to deliver the Defendant Property to the United States.

16. Given that petroleum products are commodities, their prices are set more by the market and less by negotiation (which would likely include adjustments for conditions of delivery such as date and location). Accordingly, by seeking to conduct a sale limited to a small number of potential buyers, the United States expects to achieve substantially the same price as it would

receive from an auction fully open to the public, thereby achieving the benefits of the public policy preference for a public sale without the risk to security.

17. When I am unable to obtain a commercially reasonable market value in an interlocutory sale for seized properties, I decline to execute the sale and go forward with the traditional process of storing and maintaining the properties in the custody of the U.S. government.

18. Based on my consultations about the marketability and interested purchasers, I believe that I will be able to find a buyer who will pay a reasonable fair market price for the Defendant Property.

19. The net proceeds from any such sale, after payment of fees and expenses, would be held in an interest-bearing account maintained by the government pending the conclusion of the related forfeiture action.

20. Given the attention associated with the Defendant Property, the documented threats to other vessels and to avoid interference from potential malign actors, I further believe that any such sale should occur under seal in order to protect the safety of the individuals involved and ensure the highest possible net sales value of the Defendant Property.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this __19__ day of July 2023, in Washington, D.C.

JENNIFER CRANE
Digitally signed by JENNIFER CRANE
Date: 2023.07.19 08:43:49 -04'00'

Jennifer Crane
Assistant Chief-Personal Property Unit
Asset Forfeiture Division
United States Marshals Service