

U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

Judiciary Center
601 D. Street. N.W.
Washington, D.C.  20530

February 21, 2024

**<u>Via First-Class Mail and FedEx</u>**
Oon Thian Seng and Lionel Navin Noel
Messirs T S Oon & Partners
A-18-09 & A-18-10,
Menara UOA Bansar, No. 5 Jalan Bangsar
Utama 1 59000 Kuala Lumpur, Malaysia

  **Re:** Notice of Civil Forfeiture Action, 23-cv-2065

Dear Sir/Madam:

  The United States Attorney's Office for the District of Columbia filed a Verified Complaint for Forfeiture *In Rem* on July 14, 2023, against the property identified as:

**APPROXIMATELY 523,507 BARRELS OF STRAIGHT RUN FUEL OIL FORMERLY ABOARD THE CRUDE OIL TANKER ABYSS WITH INTERNATIONAL MARITIME NUMBER 9157765**

  This matter was unsealed on February 2, 2024. Enclosed you will find the Notice of Civil Forfeiture Action, a copy of the Verified Complaint, Part 9 of Title 28 of the Code of Federal Regulations, and a blank Petition for Remission.

           Sincerely,

           MATTHEW M. GRAVES
           UNITED STATES ATTORNEY

           */s/ Rick Blaylock, Jr.*
           Rick Blaylock, Jr.
           Assistant United States Attorney
           Texas Bar Number 24103294
           United States Attorney's Office
           601 D Street NW
           Washington, D.C. 20530
           Telephone: 202-252-6765
           Email: rick.blaylock.jr@usdoj.gov



GOVERNMENT
EXHIBIT

A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|                Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-2065 |
| | § | |
| APPROXIMATELY 523,507 BARRELS OF | § | |
| STRAIGHT RUN FUEL OIL FORMERLY | § | |
| ABOARD THE CRUDE OIL TANKER ABYSS | § | |
| WITH INTERNATIONAL MARITIME | § | |
| NUMBER 9157765, | § | |
|                Defendant in Rem. | § | |

## **NOTICE OF COMPLAINT FOR FORFEITURE IN REM**

TO:   **Messrs. Oon Thian Seng and Lionel Navin Noel, Counsel for Black Swan.**

Attached is a copy of the Verified Complaint for Civil Forfeiture In Rem which has been filed in the United States District Court for the District of Columbia.  The deadline for filing a verified claim under Rule G(5) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions is thirty-five (35) days from the date this notice was mailed, which is **Wednesday, March 27, 2024**.  A claim must identify the specific property claimed, identify the claimant and state the claimant's interest in the property, be signed by the claimant under penalty of perjury, and be served on the government attorney identified below.  Supp. R. G(5)(a).  A claimant must also file and serve an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within twenty-one (21) days after filing the claim.

All pleadings should be filed with the United States District Clerk located at United States Courthouse, 333 Constitution Ave., NW, Washington, DC 20001.  A copy of all pleadings must be served on the government attorney in this case: Rick Blaylock, Jr., Assistant United States Attorney, United States Attorney's Office, 601 D St., NW, Washington, DC 20004.

Dated: <u>February 21, 2024.</u>

<u>/s/ Rick Blaylock, Jr.</u>
Rick Blaylock, Jr.
Assistant United States Attorney

Texas Bar Number 24103294
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
Telephone: 202-252-6765
Email: rick.blaylock.jr@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>c/o U.S. Attorney's Office<br>601 D Street, NW<br>Washington, DC 20530,<br><br>        Plaintiff,<br><br>   v.<br><br>APPROXIMATELY 523,507 BARRELS OF<br>STRAIGHT RUN FUEL OIL FORMERLY<br>ABOARD THE CRUDE OIL TANKER<br>ABYSS WITH INTERNATIONAL<br>MARITIME NUMBER 9157765,<br><br>        Defendant. | Civil Action No. _____<br><br>**FILED UNDER SEAL** |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff the United States of America (the "United States"), by and through the United States Attorney's Office for the District of Columbia, brings this verified complaint for forfeiture in a civil action *in rem* against the defendant property, namely all petroleum-product cargo (the "Defendant Property") formerly aboard the Crude Oil Tanker Abyss (the "Abyss"), and alleges as follows.

## NATURE OF ACTION AND THE DEFENDANT IN REM

1.  This *in rem* forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI") and Homeland Security Investigations ("HSI") involving Iran's transportation and sale of oil products to benefit sanctioned Iranian entities. This action seeks to forfeit the Defendant Property, which originated from an oil terminal in Iran where it was loaded onto a Vietnamese oil tanker, the Abyss, and then transferred to another vessel using surreptitious

means to hide the Defendant Property's Iranian origin, moving the cargo into commerce by, and for the benefit of, the National Iranian Oil Company ("NIOC"), the Iranian Oil Terminals Company ("IOTC"), the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Qods Force ("IRGC-QF"), each of which has been designated by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), located in the District of Columbia.

2.     The Defendant Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1) as foreign assets: (i) of an entity or organization engaged in the planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property: or (ii) affording a person a source of influence over such entity or organization.

3.     Defendant Property is not currently restrained. The United States requests the issuance of an arrest warrant pursuant to Rule G(3)(b)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") to the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

5.     Venue is also proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

6.     Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. § 2461(b), this court has jurisdiction for property subject to forfeiture on the high seas, which is where the Defendant Property is now located.

## FACTS GIVING RISE TO FORFEITURE

**A.    RELEVANT PARTICIPANTS IN THE IRANIAN OIL INDUSTRY**

### 1.    Iranian Ministry of Petroleum

7.    According to OFAC, "[t]he Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the IRGC-QF's revenue generation scheme." *See* https://home.treasury.gov/news/press-releases/sm1165. On October 26, 2020, OFAC designated the Iranian Ministry of Petroleum pursuant to Executive Order 13,224, as amended, "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *Id.*

### 2.    The Islamic Revolutionary Guard Corps (IRGC) and the Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF).

8.    The IRGC is a branch of the Iranian armed forces whose purpose is to defend the country's political system. The IRGC-QF is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations. IRGC-QF's "support for terrorism [is] well known." *Hake v. Bank Markazi Jomhouri Islami Iran*, Civ. A. No. 17-0114 (TJK), 2022 WL 4130837, at *11 (D.D.C. Sept. 12, 2022).

9.    The Department of the Treasury has found "[t]he IRGC is Iran's most powerful economic actor, dominating many sectors of the economy, including energy, construction, and banking." https://home.treasury.gov/news/press-releases/tg1718.

10.    According to OFAC, "[t]he IRGC and its major holdings . . . have a dominant presence in Iran's commercial and financial sectors, controlling multi-billion dollar businesses and maintaining extensive economic interests in the defense, construction, aviation, oil, banking, metal, automobile and mining industries." https://home.treasury.gov/news/press-releases/sm703.

11.     The IRGC and IRGC-QF use a network of shipping companies and front companies to hide their involvement in the sale and shipment of Iranian oil. Specifically, OFAC has found that the IRGC-QF uses a "complex network of intermediaries . . . to obfuscate its involvement in selling Iranian oil."  https://home.treasury.gov/news/press-releases/sm767; *see also* https://home.treasury.gov/news/press-releases/tg1718 ("The IRGC, long a target of U.S. sanctions, has a history of attempting to circumvent sanctions by maintaining a complex network of front companies.").

12.     The Secretary of the Treasury has previously found that holding groups and companies in the petrochemical sector and elsewhere "provide financial lifelines to the IRGC." https://home.treasury.gov/news/press-releases/sm703.

13.     The IRGC generates substantial revenues from the sale of petroleum products. For example, OFAC has reported that "[i]n spring 2019 alone, this IRGC-QF-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil, predominantly to the Syrian regime. These shipments, taken collectively, sold for more than half a billion dollars. The same network also sold nearly four million barrels of condensate and hundreds of thousands of barrels [of] gas oil, bringing in another quarter billion dollars."  https://home.treasury.gov/news/press-releases/sm767.

14.     The IRGC uses the proceeds from the distribution of petroleum to fund its terror activities. For example, OFAC has found that: "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East."  https://home.treasury.gov/news/press-releases/sm885; *see also* https://home.treasury.gov/news/press-releases/sm703 ("The profits from [the IRGC's economic] activities support the IRGC's full range of nefarious activities, including the proliferation of weapons of

mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad.").

15.     The Secretary of the Treasury has stated: "Iran's petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people." https://home.treasury.gov/news/press-releases/sm885.

16.     On October 25, 2007, OFAC designated the IRGC-QF under Executive Order 13,224, which is "aimed at freezing the assets of terrorists and their supporters." *See* https://2001-2009.state.gov/r/pa/prs/ps/2007/oct/94193.htm. In part, OFAC found that the IRGC-QF "provides material support to the Taliban, Lebanese Hizballah, Hamas, Palestinian Islamic Jihad, and the Popular Front for the Liberation of Palestine-General Command[.]" *Id.*

17.     On October 13, 2017, OFAC designated the IRGC pursuant to Executive Order 13,224 for providing material support, including training, personnel, and military equipment, to the IRGC-QF. *See* https://home.treasury.gov/news/press-releases/sm0177.

18.     On April 8, 2019, the President announced that the Government would designate the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1189). *See* https://ir.usembassy.gov/statement-from-the-president-on-the-designation-of-the-islamic-revolutionary-guard-corps-as-a-foreign-terrorist-organization/. The announcement noted, in part, that "the IRGC actively participates in, finances, and promotes terrorism as a tool of statecraft," and warned that "[i]f you are doing business with the IRGC, you will be bankrolling terrorism." *Id.*

19.     On April 8, 2019, the State Department similarly announced the intent to designate the IRGC, including the IRGC-QF. *See* https://2017-2021.state.gov/designation-of-the-islamic-

revolutionary-guard-corps/index.html. That announcement noted that "[T]he IRGC—most prominently through its Qods Force—has the greatest role among Iran's actors in directing and carrying out a global terrorist campaign." *Id.*

20.     On April 15, 2019, the Secretary of State published a notice in the Federal Register that he had designated the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the INA. *See* 84 Fed. Reg. 15,278 (Apr. 15, 2019), https://www. federalregister.gov/documents/2019/04/15/2019-07415/in-the-matter-of-the-designation-of-the-islamic-revolutionary-guard-corps-and-other-aliases-as-a.

21.     IRGC-QF official Rostam Qasemi (a/k/a Rostam Ghasemi), who previously served as the Iranian Minister of Petroleum from 2011 to 2013, "manages a group of individuals, shipping and oil companies, and vessels to sell Iranian crude, condensates, and gas oil." https://home. treasury.gov/news/press-releases/sm767. On September 4, 2019, OFAC designated Qasemi "for acting for or on behalf of the IRGC-QF and IRGC-QF Commander Qasem Soleimani." *Id.* Following the death of Soleimani in 2020, Qasemi "assumed a portion of former IRGC-QF Commander Qasem Soleimani's role in facilitating shipments of oil and petroleum products for the financial benefit of the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/ sm1165.

22.     The IRGC and IRGC-QF act in foreign commerce with specific aims to threaten U.S. interests and the national security of the United States, affecting U.S. commerce. The following is just a brief list of many examples of how the IRGC and IRGC-QF engage in foreign commerce and activities outside the borders of Iran to harm the interests of the United States:

a.      In likely retaliation for the death of former IRGC-QF commander Qasem Soleimani, in 2021, a member of the IRGC used interstate commerce facilities in a failed

plot to commit murder-for-hire and provide material support to a transnational murder plot targeting former National Security Advisor John Bolton, https://www.justice.gov/opa/pr/member-irans-islamic-revolutionary-guard-corps-irgc-charged-plot-murder-former-national.

      b.     In 2021, "[t]hrough the IRGC-QF, Iran continued its support to several U.S.-designated terrorist groups, providing funding, training, weapons, and equipment to various groups within the region. . . . Iran-backed militias continued sporadic attacks on [the U.S.] Embassy [in] Baghdad and bases hosting U.S. and other Defeat-ISIS forces in Iraq and Syria[,]" State Dep't 2021 Country Reports on Terrorism, at 125-26, available at: https://www.state.gov/wp-content/uploads/2023/02/Country_Reports_2021_Complete_MASTER.no_maps-011323-Accessible.pdf.

      c.     In 2021, "Iran pursued or supported terrorist attacks against Israeli targets in 2021, including . . . a January bomb attack outside the Israeli embassy in New Delhi for which the Indian government said the IRGC-QF was responsible," *id.* at 215.

      d.     From 2006 to 2009, a series of terrorist attacks by a group funded and supplied by the IRGC-QF killed or severely injured U.S. military servicemembers and civilians, *see Neiberger v. Islamic Republic of Iran*, Civ. A. No. 16-2193 (EGS/ZMF), 2022 WL 17370239, at *1 (D.D.C. Sept. 8, 2022).

      e.     In 2007, the IRGC-QF continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that killed thousands of U.S. forces, and explosively formed penetrators that have a higher lethality rate than other types of improvised explosive devices, and were specially designed to defeat armored

vehicles used by U.S. forces in Iraq, *see Burks v. Islamic Republic of Iran*, Civ. A. No. 16-1102 (CRC), 2020 WL 13303322, at *2 (D.D.C. Aug. 21, 2020).

      f.     In January 2007, the IRGC-QF led by Abdul Reza Shahla'i planned an attack in Karbala, Iraq that killed five U.S. soldiers and wounded three others, https://rewardsforjustice.net/rewards/abdul-reza-shahlai/; *see also Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475, 488 (D.D.C. 2021) (Mehta, J.).

      g.     In June 1996, the IRGC was responsible for planning the attack on the Khobar Towers in Dhahran, Saudi Arabia, during which 19 U.S. Air Force personnel were killed and more than 350 were injured, *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 174 (D.D.C. 2010). IRGC senior officials recruited the attackers and worked in conjunction with them and Hezbollah, operating out of a terrorist base in the Bekaa or Beqaa Valley in Lebanon where the IRGC provided supplies and funds for the attack. *Id.*

23.     Through these actions and many others, the IRGC and IRGC-QF's terrorism affects foreign commerce in a manner that harms the interests of the United States, both domestic and abroad. Indeed, a significant purpose of the IRGC and IRGC-QF's campaigns of terror are to thwart the United States' diplomatic efforts, including its support for peace in the Middle East and recognition of Israel, by threatening the security of U.S. nationals and attempting to instill fear in the citizens of this country located within and outside its territorial boundaries. *See In re Sealed Case*, 936 F.3d 582, 592 (D.C. Cir. 2019) (criminal defendant's use of drug trafficking to support terrorist organizations "magnifies the effect of his conduct on commerce between the countries where he was operating and the United States"). These terrorist activities undertaken in foreign commerce plainly have a domestic effect on the United States and its domestic commerce.

3.    **The National Iranian Oil Company**

24.    The Iranian Ministry of Petroleum oversees NIOC, which "is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran." *See* https://home.treasury.gov/news/press-releases/sm1165.

25.    As this Court has noted, "NIOC is one of the world's largest oil companies and generates billions of dollars in revenue each year[.]" *Holladay v. Islamic Republic of Iran*, 523 F. Supp. 3d 100, 110 (D.D.C. 2021) (Moss, J.) (cleaned up). "[I]t functions primarily as a commercial entity aimed at the production and sale of oil." *Est. of Fishbeck v. Islamic Republic of Iran*, Civ. A. No. 18-2248 (CRC), 2021 WL 6808189, at *3 (D.D.C. Mar. 1, 2021).

26.    According to OFAC, NIOC is "an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's [IRGC-QF] and its terrorist proxies." *See* https://home.treasury.gov/news/press-releases/sm885. Indeed, as this Court has noted, NIOC "after funding its own operations and making investments in Iran's oil industry, its revenue goes to fund the Iranian government[,]" which "depending on the price of oil, revenue from NIOC is between one-third and two-thirds of the Iranian government's total revenue." *Holladay*, 523 F. Supp. 3d at 110 (quoting declaration).

27.    OFAC has found that NIOC supplies crude oil and condensate sold by the IRGC-QF. *See* https://home.treasury.gov/news/press-releases/sm767.

28.    On September 24, 2012, the U.S. Department of the Treasury submitted a report to Congress, as required by the Iran Threat Reduction and Syria Human Rights Act of 2012, finding that NIOC was an agent or affiliate of the IRGC. *See* https://www.treasury.gov/press-center/press-releases/Pages/tg1718.aspx.

29.    On October 26, 2020, OFAC designated NIOC pursuant to Executive Order 13,224 "for having materially assisted, sponsored, or provided financial, material, or technological support

for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

30.    In designating and reporting on the activities of NIOC, the Treasury Department made clear that NIOC's efforts are not limited to the domestic borders of Iran, but instead, NIOC undertakes efforts in foreign commerce contrary to the interests of the United States. For example:

a.    in designating NIOC, OFAC noted that NIOC engaged in foreign commerce with the illegitimate Maduro regime in Venezuela, including by "charter[ing] multiple vessels to support the transport of tens of thousands of metric tons of gasoline destined for Venezuela[,]" *id.*;

b.    in designating entities working with NIOC, OFAC noted that NIOC worked with such entities to facilitate shipments of Iranian petroleum to foreign customers of NIOC, *see* https://home.treasury.gov/news/press-releases/jy1115;

c.    NIOC has entered into fossil fuel supply contracts with foreign organizations, committing itself to provide energy products to foreign companies, *see, e.g., Crescent Petroleum Co. v. Nat'l Iranian Oil Co.*, Civ. A. No. 22-1361 (JMC) (D.D.C. filed May 16, 2022), ECF No. 1 (Compl.) ¶¶ 1-2, 10-15, and using U.S. dollars to transact its business, *id.* ¶ 37; *see also id.*, ECF No. 1-6 at 23; and

d.    NIOC has entered into agreements to develop oil and gas fields with a Russian-owned energy company, Gazprom, which OFAC has designated under Executive Order 14,0424, as being Russian-government affiliated entities. *See* https://www.reuters.com/business/energy/iran-russias-gazprom-sign-primary-deal-energy-cooperation-2022-07-19/

31. NIOC's use of foreign commerce to fund and provide material support to the IRGC and IRGC-QF thwart U.S. interests not just by providing a means to finance the wrongful actions of the IRGC and IRGC-QF, which plainly affect commerce with the United States, but also by providing support to regimes hostile to U.S. interests, including Russia. *See Sealed Case*, 936 F.3d at 589-50 (foreign commerce power allows Congress to outlaw activities "that lends financial support to terrorist organizations in foreign countries when that support merely 'affects' commerce with the United States"). These activities undertaken in foreign commerce plainly have a domestic effect on the United States and its domestic commerce.

32. NIOC operates through itself and several subsidiaries or components, including IOTC.

### 4.    Iranian Oil Terminals Company (IOTC)

33. According to the publicly available webpage for IOTC, IOTC is a subsidiary of NIOC that runs the Bandar Mahshahr Oil Terminal. Specifically, its website states that IOTC "[i]s one of the companies under [the] umbrella of National Iranian Oil Company [and] is an operational, specialized and professional organization that has the duty of all reservation affairs, crude oil, oil products, liquefied gas and marine services export and import operations along with providing measurement and lab services. This important task is under implemented [*sic*] by aiming at support and sustained continuation of oil and gas production in the country in four operational zones of Kharg Oil Terminals[.]"    IOTC, *Iranian Oil Terminals News Network*, https://www.iotco.ir/en/aboutus/introductioncompany (last checked July 13, 2023).

34. IOTC is owned by the government of Iran.

35. According to IOTC's website, the Bandar Mahshahr Oil Terminal is used for storing the products of the Abadan Refinery. https://www.iotco.ir/en/oilterminals/mahshahr-Mahshahr-Oil-Terminal. Imports and exports are carried out at Bandar Mahshahr. *Id.*

## B. IMPORTANCE OF PETROLEUM AND SHIPPING INDUSTRIES TO THE IRGC

36. OFAC has observed that IRGC-QF deliberately utilizes a "complex network of intermediaries," including "dozens of ship managers, vessels, and facilitators," for the purpose of "obfuscate[ing] its involvement in selling Iranian oil." *See* https://home.treasury.gov/news/press-releases/sm767. That obfuscation allows the IRGC-QF and its intermediaries to access the international financial system and sell sanctioned Iranian oil to foreign customers.

37. In spring 2019 alone, one IRGC-QF-led network employed more than a dozen vessels to transport nearly ten million barrels of crude oil and had taken steps to hide Iranian, IRGC, and NIOC involvement in certain transactions. *Id.* These shipments, taken collectively, sold for more than half a billion dollars. *Id.* The same network also sold nearly four million barrels of condensate and hundreds of thousands of barrels in gas oil, bringing in another quarter billion dollars. *Id.*

38. Beyond funding the IRGC and the IRGC-QF's terrorist activities, the introduction of billions of dollars' worth of Iranian oil has broad effects on foreign commerce. Oil is a global commodity, pricing for which is set in global markets. Thus, increases or decreases in the supply of oil across the globe have a natural and predictable effect on global consumers, including consumers in the United States.

39. In designating NIOC and the National Iranian Tanker Company ("NITC") under Executive Order 13,224, OFAC reported: "NIOC and NITC provide both the oil and tankers for the sale of Iranian oil by the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165. "The cooperation and coordination between the IRGC-QF and these entities extends well beyond the simple sale of oil, including coordination between NIOC and the Central Bank of Iran to facilitate the collection of tens of millions of dollars in proceeds from the sale of oil that benefitted the IRGC-QF." *Id.*

40.     According to OFAC, the IRGC uses the proceeds from its involvement in the oil industry and other sectors of the Iranian economy to "support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad." *See* https://home.treasury.gov/news/press-releases/sm703.

41.     OFAC has reported that "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." *See* https://home.treasury.gov/news/press-releases/sm885. The then-Treasury Secretary added: "Iran's petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people." *Id.*

**C.    THE DEFENDANT PROPERTY ORIGINATED FROM BANDAR MAHSHAHR, IRAN AND WAS EXCHANGED USING SURREPTITIOUS MEANS TO DISGUISE ITS IRANIAN ORIGIN.**

42.     The Abyss is a Vietnamese-flagged Aframax tanker, with a history of being an active carrier of Iranian oil, having previously transported Iranian crude oil and refined products at least nineteen times since 2019.

- 13 -

43.     The Abyss was featured in a YouTube video posted in June 2019 from a user in Kharg Island, Iran. The video was titled "NITC Tanker is ready to go.. for next destination."



NITC Tanker is ready to go.. for next destination

*Source: Youtube*, https://www.youtube.com/watch?v=g5XCFcz0O8E

44.     In one instance in or around April 2019, the Abyss received approximately 716,000 barrels of crude oil from a NITC vessel, the Diamond II (IMO No. 9218478) via a ship-to-ship transfer.



- 14 -

45.     As to the Defendant Property here, on or around February 22, 2023, the Abyss arrived in the port of Bandar Mahshahr, Iran and positioned at berth.



Bandar Mahshahr, Iran;  30.46464° N, 49.18044° E; 2023-02-22

46.     On or around February 23, 2023, the Abyss reported a change in draft consistent with loading approximately 612,262 barrels of gasoil.

47.     To avoid law enforcement and intelligence detection, the Abyss was manipulating her Automatic Identification System ("AIS") data to conceal her location while loading at Bandar Mahshahr.

48.     AIS is a system that automatically transmits a ship's position along with a timestamp and is intended to help government authorities identify vessels, assist in search and rescue operations, and provide supplementary information from other navigational systems, such as radar.

49.     Specifically, the Abyss's AIS transponder was offline from February 18, 2023, at 21:01 UTC to February 22, 2023, at 20:10 UTC. On February 23, 2023, the Abyss's AIS data

showed her as being present in the Persian Gulf, but then suddenly on February 24, 2023, she appeared on AIS in Southeast Asia off the coast of Thuan An, Hue. According to an expert in the maritime industry, this change in location is physically impossible and indicates the Abyss was manipulating her location data at the time she was claiming to be in the Persian Gulf.

50.     On or about February 27, 2023, the Abyss was captured on satellite imagery in the Gulf of Oman, where she updated her AIS data to report a charge in her draft depth from 12.8 meters to 8.2 meters and back again to 12.8 meters just 19 minutes later. Given how quickly these draft updates occurred, there was no transfer of the Defendant Property, and the Abyss was manipulating her AIS data.

51.     From March 4, 2023, to March 12, 2023, the Abyss's AIS data reported her position off the coast of Hue, Vietnam at the location 16.73804º N, 107.7579º E. As seen in the image below, the Abyss was not at the location she indicated in her AIS data in this timeframe.



*Abyss absent from the coast of Vietnam as reported to through its AIS*

52.     On or about March 17, 2023, the Abyss was captured in satellite imagery idling in the Riau archipelago off the coast of Indonesia.



53.     On or about March 26, 2023, the Abyss was captured in satellite imagery in the eastern anchorage of Singapore.



54. On or around March 28, 2023, the Abyss was captured in satellite imagery being positioned by two tugboats to begin a ship-to-ship transfer with a storage vessel, in the anchorage of Sungai Linggi, Malaysia.

55. The storage vessel is the property of a foreign company whose shares are listed on a United States stock exchange.

56. Between on or around March 31, 2023, and on or around April 1, 2023, the Abyss and the storage vessel disengaged from the ship transfer, with the latter having onboarded a total of approximately 612,262 barrels of Iranian petroleum product from the Abyss.

57. On or about April 1, 2023, the Abyss reported a draft depth of 9.0 meters, representing she no longer carried the Defendant Property, indicating that she had successfully transferred the Defendant Property to the storage vessel.

58. The agreement under which the storage vessel took on the Defendant Property called for the purported owner of the Defendant Property, a United Arab Emirates-based company ("Purported Owner"), to remit payment for the storage in U.S. dollars. Specifically, the relevant storage agreement called for a storage fee of USD $20,000 per day from the commencement of the agreement, a loading fee is USD $12,500 per day on a pro-rata basis, and a cargo discharge fee of USD $29,500 per day on a pro-rata basis.

59. Additionally, the owner and manager of the Abyss have a history of conducting U.S. dollar transactions to facilitate the transportation of petrochemical products, including during the period that the Abyss was carrying the Iranian-sourced Defendant Property.

60. Ahead of the Abyss's ship-to-ship transfer with the storage vessel, the Purported Owner presented fraudulent paperwork concerning the nature and origin of the Defendant Property.

61.     That paperwork represented that the Abyss took on the Defendant Property from Basrah, Iraq. That paperwork also represented that the cargo loading to the Abyss commenced at approximately 3:00 p.m. on February 21, 2023, and completed at approximately 4:10 p.m. on February 23, 2023, after which the Abyss sailed out of Basrah, Iraq on February 23, 2023.

62.     However, Iraqi fuel oil is not exported from Al-Basrah Oil Terminal in Basrah, Iraq, but only from Khor Al-Zubayr, Iraq. *See* Exxon Mobil, Basrah Heavy, https://corporate.exxonmobil.com/what-we-do/energy-supply/crude-trading/basrah-heavy (last checked July 13, 2023); Reuters, *Iraq's SOMO offers fuel oil term supplies for April to September* (Feb. 10, 2023), available at: https://www.reuters.com/business/energy/iraqs-somo-offers-fuel-oil-term-supplies-april-september-2023-02-10/#:~:text=SINGAPORE%2C%20Feb%2010%20(Reuters),validity%20up%20to%2020%20days.

63.     Moreover, satellite imagery reflects that the Abyss was not in Basrah, Iraq on or about February 21, 2023.

64.     Rather, as noted above, satellite imagery confirms that at the time the Abyss represented it was loading at Al-Basrah Oil Terminal in Iraq, the Abyss was actually near Bandar Mahshahr, Iran.

65.     The Abyss reported AIS data indicated that on February 23, 2023, she was located in the Persian Gulf and then on February 24, 2023, was in Southeast Asia off the coast of Vietnam. Traversing that distance within the time indicated is not possible for a vessel the size of the Abyss.

66.     On or about July 4, 2023, the Defendant Property was transferred to another vessel, which is presently located on the high seas.

**FORFEITURE**
**(18 U.S.C. § 981(a)(1)(G)(i))**

67.     The United States incorporates by reference the allegations set forth above as if fully set forth herein.

68.     Under numerous theories, the Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(G).

**A.      The Defendant Property is the Property of NIOC, Which Has Perpetrated and Are Perpetrating a Federal Crime of Terrorism.**

69.     The Defendant Property is the property of NIOC (or its subsidiaries), which has perpetrated a federal crime of terrorism themselves, namely knowingly providing material support to a designated terrorist organization.

70.     In transferring the Defendant Property for the purposes of sale, NIOC and its subsidiaries provided or attempted to provide resources to IRGC or IRGC-QF, in violation of 18 U.S.C. § 2339B(a)(1).

71.     18 U.S.C. § 2339B prohibits persons from knowingly providing, or attempting to provide, material support or resources to a foreign terrorist organization or conspiring to do so.

72.     As noted above, the IRGC, including the IRGC-QF, is a foreign terrorist organization designated as such by the Secretary of State under INA Section 219, 8 U.S.C. § 1189.

73.     As described above, by selling or facilitating the sale of the Defendant Property, NIOC and its subsidiaries knowingly sought to aid the IRGC and IRGC-QF by providing a source of funding to them.

74.     NIOC and its subsidiaries' knowing material support of the IRGC and IRGC-QF occurred in foreign commerce as NIOC and its subsidiaries sought to peddle the Defendant Property to foreign purchasers, including using doctored records from a foreign country.

75. NIOC and its subsidiaries' use of foreign commerce to provide material support to the IRGC and IRGC-QF has a sufficient nexus to the United States as the IRGC and IRGC-QF's wrongful actions affect U.S. commerce, including by killing U.S. nationals, and the introduction of billions of dollars of oil annually into the black market has predictable effects on the price of petroleum and other fossil fuels in the United States as crude oil and other fossil fuels are global commodities. *See, e.g.,* CNBC, *An Iran nuclear deal revival could dramatically alter oil prices— if it happens*, available at: https://www.cnbc.com/2022/08/31/an-iran-nuclear-deal-revival-could-dramatically-alter-oil-prices.html (Aug. 31, 2022); Reuters, *Oil prices sink $2/bbl on possible Iran oil exports, rising interest rates*, available at: https://www.reuters.com/business/energy/oil-prices-rise-possible-opec-supply-cuts-2022-08-25/ (Aug. 25, 2022) ("Oil prices slumped by about $2 a barrel on Thursday in volatile trade as investors braced for the possible return to global markets of sanctioned Iranian oil exports and on worries that rising U.S. interest rates would weaken fuel demand."); World Bank Group, Middle East and North Africa Region, Office of the Chief Economist, *Lifting Economic Sanctions on Iran: Global Effects and Strategic Responses* (Feb. 2016), available at: https://documents1.worldbank.org/curated/en/298681467999709496/pdf/WPS7549.pdf ("The lifting of sanctions will have the strongest effect on oil production in Iran, and petroleum and coal products in Israel, the EU, and the US[.]").

76. The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) as an asset of an entity or organization engaged in planning or perpetrating a federal crime of terrorism.

**B      The Defendant Property is the Property of NIOC, Which Affords It a Source of Influence Over the IRGC an IRGC-QF.**

77.     The Defendant Property is the property of NIOC (or its subsidiaries), which affords them a source of influence over the IRGC and IRGC-QF, entities which have engaged in federal crimes of terrorism.

78.     As noted above, the IRGC, including the IRGC-QF, is a federal terrorist organization designated as such by the Secretary of State under INA Section 219, 8 U.S.C. § 1189.

79.     The IRGC and IRGC-QF have committed numerous terrorism-related offenses identified in 18 U.S.C. § 2332b(g)(5), including the killing and attempts to kill U.S. personnel proscribed by 18 U.S.C. § 1114.

80.     NIOC and its subsidiaries' efforts to sell and facilitate the sale of the Defendant Property were critical to furthering the affairs of the IRGC and IRGC-QF as "the profits from Iran's oil industry are its 'financial lifeline.'" *United States v. All Petroleum-Prod. Cargo Aboard the Bella*, Civ. A. No. 20-1791 (JEB), 2021 WL 4502056, at *4 (D.D.C. Oct. 1, 2021).  Indeed, such activities concerning the Defendant Property were used to further the affairs of the IRGC and IRGC-QF's terrorist enterprise and to make their prohibited conduct less difficult.

81.     The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) as affording a person a source of influence over an entity or organization engaged in planning or perpetrating a federal crime of terrorism.

### C. Alternatively, the Defendant Property is the Property of the Purported Owner, Which Affords It a Source of Influence Over NIOC and Its Subsidiaries, the IRGC, and/or the IRGC-QF.

82.    Alternatively, the Defendant Property is the property of the Purported Owner, which affords it a source of influence over NIOC (and/or its subsidiaries), the IRGC, and/or IRGC-QF, entities which have engaged in federal crimes of terrorism.

83.    As noted above, the IRGC, including the IRGC-QF, is a foreign terrorist organization designated as such by the Secretary of Department under INA Section 219, 8 U.S.C. § 1189, and has committed federal crimes of terrorism identified in 18 U.S.C. § 2332B(g)(5).

84.    As noted above, NIOC and its subsidiaries have themselves engaged in planning or perpetrating a federal crime of terrorism, namely knowingly providing material support to the IRGC and IRGC-QF.

85.    The Purported Owner's supposed purchase of the Defendant Property was critical to furthering the affairs of the IRGC and IRGC-QF as "the profits from Iran's oil industry are its 'financial lifeline.'" *Bella*, 2021 WL 4502056, at *4.  Indeed, without firms acting as purchasers of Iranian-sourced petroleum, the efforts of the Iranian State Actors to obtain financing for the terrorist activities of the IRGC and IRGC-QF would fail.  Accordingly, were the Defendant Property the property of Purported Owner, its purchase of the Iranian-sourced petroleum made the prohibited conduct of NIOC (or its subsidiaries), the IRGC, and IRGC-QF less difficult.

86.    The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) as affording a person a source of influence over an entity or organization engaged in planning or perpetrating a federal crime of terrorism.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that notice issue on the Defendant Property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: July 14, 2023
      Washington, D.C.

                    Respectfully submitted,

                    MATTHEW M. GRAVES, DC BAR #481052
                    United States Attorney

                    By:        /s/ *Brian P. Hudak*
                        BRIAN P. HUDAK
                        KAREN P. W. SEIFERT
                        MAEGHAN O. MIKORSKI
                        RAJBIR DATTA
                        ERIKA OBLEA
                        Assistant United States Attorneys
                        601 D Street, NW
                        Washington, DC 20530
                        (202) 252-7566 (main line)

                    *Attorneys for the United States of America*

## **VERIFICATION**

I, Marcus Giebel, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 14th day of July 2023.


_____*/s/  Marcus Giebel*_____
Special Agent Marcus Giebel
Federal Bureau of Investigation

**CIVIL COVER SHEET**

JS-44 (Rev. 11/2020 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | APPROXIMATELY 523,507 BARRELS OF STRAIGHT RUN FUEL OIL FORMERLY ABOARD THE CRUDE OIL TANKER ABYSS WITH INTERNATIONAL MARITIME NUMBER 9157765 ⊞ |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 99999
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| U.S. Attorney's Office<br>601 D Street, NW<br>Washington, DC 20530<br>(202) 252-7566 ⊞ | |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

**\*(If Antitrust, then A governs)\***

⦿ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets Act of 2016 (DTSA)

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☒ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc
☐ 460 Deportation
☐ 462 Naturalization Application

☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act (TCPA)
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| G. *Habeas Corpus/ 2255* | H. *Employment Discrimination* | I. *FOIA/Privacy Act* | J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi-district Litigation  ○ 7 Appeal to District Judge from Mag. Judge  ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

18 U.S.C. § 981(a)(1)(G)(i) -- Civil Forfeiture of Petroleum

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 0<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

| DATE: _____ July 14, 2023 _____ | SIGNATURE OF ATTORNEY OF RECORD _____ /s/ Brian P. Hudak _____ |
|---|---|

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

　　v.

APPROXIMATELY 523,507 BARRELS OF
STRAIGHT RUN FUEL OIL FORMERLY
ABOARD THE CRUDE OIL TANKER
ABYSS WITH INTERNATIONAL
MARITIME NUMBER 9157765,

　　　　　Defendant.

Civil Action No. _____

FILED UNDER SEAL

## WARRANT FOR ARREST *IN REM*

TO:　　THE UNITED STATES MARSHALS SERVICE AND/OR ANY OTHER DULY
　　　　AUTHORIZED OFFICER:

　　　　WHEREAS a Verified Complaint for Forfeiture *In Rem* has been filed in the United States
District Court for the District of Columbia, on the 30th day of March 2023, alleging that the above
defendant property are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C.
§ 981(a)(1)(G)(i);

　　　　YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant property,
thus bringing, within the jurisdiction of the Court, said property, more fully described as:

**APPROXIMATELY 523,507 BARRELS OF STRAIGHT RUN FUEL OIL FORMERLY
ABOARD THE CRUDE OIL TANKER ABYSS WITH INTERNATIONAL MARITIME
NUMBER 9157765**

　　　　YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file
the same in this Court with your return thereon, identifying the individuals upon whom copies
were served and the manner employed, unless, pursuant to Rule G(3)(c)(ii)(A) of the Supplemental
Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the defendant properties
are in the government's possession, custody, or control.

Dated: July _____, 2023

_____
Clerk of the Court

**CODE OF FEDERAL REGULATIONS
TITLE 28--JUDICIAL ADMINISTRATION
CHAPTER I--DEPARTMENT OF JUSTICE
PART 9--REGULATIONS GOVERNING THE REMISSION OR MITIGATION OF CIVIL
AND CRIMINAL FORFEITURES**

§ 9.1 Authority, purpose, and scope.

§ 9.2 Definitions.

§ 9.3 Petitions in administrative forfeiture cases.

§ 9.4 Petitions in judicial forfeiture cases.

§ 9.5 Criteria governing administrative and judicial remission and mitigation.

§ 9.6 Special rules for specific petitioners.

§ 9.7 Terms and conditions of remission and mitigation.

§ 9.8 Provisions applicable to victims.

§ 9.9 Miscellaneous Provisions.

**§ 9.1 Authority, purpose, and scope.**

(a) Purpose. This part sets forth the procedures for agency officials to follow when considering remission or mitigation of administrative forfeitures under the jurisdiction of the agency, and civil judicial and criminal judicial forfeitures under the jurisdiction of the Criminal Division. The purpose of the regulations in this part is to provide a basis for ameliorating the effects of forfeiture through the partial or total remission of forfeiture for individuals who have an interest in the forfeited property but who did not participate in, or have knowledge of, the conduct that resulted in the property being subject to forfeiture and, where required, took all reasonable steps under the circumstances to ensure that such property would not be used, acquired, or disposed of contrary to law. Additionally, the regulations provide for partial or total mitigation of the forfeiture and imposition of alternative conditions in appropriate circumstances.

(b) Authority to grant remission and mitigation.

(1) Remission and mitigation functions in administrative forfeitures are performed by the agency seizing the property. Within the Federal Bureau of Investigation, authority to grant remission and mitigation is delegated to the Forfeiture Counsel, who is the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel; within the Drug Enforcement Administration, authority to grant remission and mitigation is delegated to the Forfeiture Counsel, Office of Chief Counsel; and within the Immigration and Naturalization Service, authority to grant remission and mitigation is delegated to the INS Regional Directors.

(2) Remission and mitigation functions in judicial cases are performed by the Criminal Division of the Department of Justice. Within the Criminal Division, authority to grant remission and mitigation is delegated to the Chief, Asset Forfeiture and Money Laundering Section, Criminal Division.

(3) The powers and responsibilities delegated by these regulations in this part may be redelegated to attorneys or managers working under the supervision of the designated officials.

(c) The time periods and internal requirements established in this part are designed to guide the orderly administration of the remission and mitigation process and are not intended to create rights or entitlements in favor of individuals seeking remission or mitigation. The regulations will apply to all decisions on petitions for remission or mitigation made on or after February 3, 1997. The regulations will apply to decisions on requests for reconsideration of a denial of a petition under §§ 9.3(j) and 9.4(k) only if the initial decision on the petition was made under the provisions of this part effective on February 3, 1997.

(d) This part governs any petition for remission filed with the Attorney General and supersedes any Department of Justice regulation governing petitions for remission, to the extent such regulation is inconsistent with this part. In particular, this part supersedes the provisions of 21 CFR 1316.79 and 1316.80, which contain remission and mitigation procedures for property seized for narcotics violations. The provisions of 8 CFR 274.13 through 274.19 and 28 CFR 8.10, which concern non-drug related forfeitures, are also superseded by this part where those regulations relate to remission and mitigation.

## § 9.2 Definitions.

As used in this part:

(a) The term administrative forfeiture means the process by which property may be forfeited by an investigative agency rather than through judicial proceedings.

(b) The term appraised value means the estimated market value of an asset at the time and place of seizure if such or similar property was freely offered for sale between a willing seller and a willing buyer.

(c) The term Assets Forfeiture Fund means the Department of Justice Assets Forfeiture Fund or Department of the Treasury Asset Forfeiture Fund, depending upon the identity of the seizing agency.

(d) The term Attorney General means the Attorney General of the United States or his or her designee.

(e) The term beneficial owner means a person with actual use of, as well as an interest in, the property subject to forfeiture.

(f) The terms Chief, Asset Forfeiture and Money Laundering Section, and Chief, refer to the Chief of the Asset Forfeiture and Money Laundering Section, Criminal Division, United States Department of Justice.

(g) The term general creditor means one whose claim or debt is not secured by a specific right to obtain satisfaction against the particular property subject to forfeiture.

(h) The term judgment creditor means one who has obtained a judgment against the debtor but has not yet received full satisfaction of the judgment.

(i) The term judicial forfeiture means either a civil or a criminal proceeding in a United States District Court that may result in a final judgment and order of forfeiture.

(j) The term lienholder means a creditor whose claim or debt is secured by a specific right to obtain satisfaction against the particular property subject to forfeiture. A lien creditor qualifies as a lienholder

if the lien:

(1) Was established by operation of law or contract;

(2) Was created as a result of an exchange of money, goods, or services; and

(3) Is perfected against the specific property forfeited for which remission or mitigation is sought  (e.g., a real estate mortgage; a mechanic's lien).

(k) The term net equity means the amount of a lienholder's monetary interest in property subject to forfeiture.  Net equity shall be computed by determining the amount of unpaid principal and unpaid interest at the time of seizure, and by adding to that sum unpaid interest calculated from the date of seizure through the last full month prior to the date of the decision on the petition. Where a rate of interest is set forth in a security agreement, the rate of interest to be used in this computation will be the annual percentage rate so specified in the security agreement that is the basis of the lienholder's interest. In this computation, however, there shall be no allowances for attorneys' fees, accelerated or enhanced interest charges, amounts set by contract as damages, unearned extended warranty fees, insurance, service contract charges incurred after the date of seizure, allowances for dealer's reserve, or any other similar charges.

(l) The term owner means the person in whom primary title is vested or whose interest is manifested by the actual and beneficial use of the property, even though the title is vested in another.  A victim of an offense, as defined in paragraph (v) of this section, may also be an owner if he or she has a present legally cognizable ownership interest in the property forfeited.  A nominal owner of property will not be treated as its true owner if he or she is not its beneficial owner.

(m) The term person means an individual, partnership, corporation, joint business enterprise, estate, or other legal entity capable of owning property.

(n) The term petition means a petition for remission or mitigation of forfeiture under the regulations in this part.  This definition includes a petition for restoration of the proceeds of sale of forfeited property and a petition for the value of forfeited property placed into official use.

(o) The term petitioner means the person applying for remission, mitigation, restoration of the proceeds of sale, or for the appraised value of forfeited property, under the regulations in this part.  A petitioner may be an owner as defined in § 9.2(l), a lienholder as defined in § 9.2(j), or a victim as defined in § 9.2(v), subject to the limitations of § 9.8.

(p) The term property means real or personal property of any kind capable of being owned or possessed.

(q) The term record means a series of arrests for related crimes, unless the arrestee was acquitted or the charges were dismissed for lack of evidence;  a conviction for a related crime or completion of sentence within ten years of the acquisition of the property subject to forfeiture;  or two convictions for a related crime at any time in the past.

(r) The term related crime as used in § 9.2(q) and § 9.6(e) means any crime similar in nature to that which gives rise to the seizure of property for forfeiture.  For example, where property is seized for a violation of the federal laws relating to drugs, a related crime would be any offense involving a violation of the federal laws relating to drugs or the laws of any state or political subdivision thereof relating to drugs.

(s) The term related offense as used in § 9.8 means:

(1) Any predicate offense charged in a Federal Racketeer Influenced and Corrupt Organizations Act (RICO) count for which forfeiture was ordered; or

(2) An offense committed as part of the same scheme or design, or pursuant to the same conspiracy, as was involved in the offense for which forfeiture was ordered.

(t) The term Ruling Official means any official to whom decision making authority has been delegated pursuant to § 9.1(b).

(u) The term seizing agency means the federal agency that seized the property or adopted the seizure of another agency for federal forfeiture.

(v) The term victim means a person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture. A drug user is not considered a victim of a drug trafficking offense under this definition. A victim does not include one who acquires a right to sue the perpetrator of the criminal offense for any loss by assignment, subrogation inheritance, or otherwise form the actual victim, unless that person has acquired an actual ownership interest in the forfeited property.

(w) The term violator means the person whose use or acquisition of the property in violation of the law subjected such property to seizure for forfeiture.

## § 9.3 Petitions in administrative forfeiture cases.

(a) Notice of seizure. The notice of seizure and intent to forfeit the property shall advise any persons who may have a present ownership interest in the property to submit their petitions for remission or mitigation within thirty (30) days of the date they receive the notice in order to facilitate processing. Petitions shall be considered any time after notice until the forfeited property is placed into official use, sold, or otherwise disposed of according to law, except in cases involving petitions to restore the proceeds from the sale of forfeited property. A notice of seizure shall include the title of the seizing agency, the Ruling Official, the mailing and street address of the official to whom petitions should be sent, and an asset identifier number.

(b) Persons who may file. A petition for remission or mitigation must be filed by a petitioner as defined in § 9.2(o) or as prescribed in §§ 9.9(g) and (h).

(c) Contents of petition.

(1) All petitions must include the following information in clear and concise terms:

(i) The name, address, and social security or other taxpayer identification number of the person claiming an interest in the seized property who is seeking remission or mitigation;

(ii) The name of the seizing agency, the asset identifier number, and the date and place of seizure;

(iii) A complete description of the property, including make, model, and serial numbers, if any; and

(iv) A description of the petitioner's interest in the property as owner, lienholder, or otherwise, supported by original or certified bills of sale, contracts, deeds, mortgages, or other documentary

evidence.

(2) Any factual recitation or documentation of any type in a petition must be supported by a sworn affidavit.

(d) Releases. In addition to the contents of the petition for remission or mitigation set forth in paragraph (c) of this section, upon request, the petitioner shall also furnish the agency with an instrument executed by the titled or registered owner and any other known claimant of an interest in the property releasing interest in such property.

(e) Filing petition with agency.

(1) A petition for remission or mitigation subject to administrative forfeiture shall be addressed to the appropriate federal agency as follows:

(i) Drug Enforcement Administration, Office of Chief Counsel, Street Address: 700 Army Navy Drive, Arlington, VA 22202

Mailing Address: P.O. Box 28356, Washington, D.C. 20038.

(ii) Federal Bureau of Investigation, Special Agent in Charge, Field Office that seized the property.

(iii) Immigration and Naturalization Service District Director, Chief Patrol Agent, or Regional Asset Forfeiture Office at location with jurisdiction over the forfeiture proceeding.

(2) The petition is to be sent to the official address provided in the notice of seizure and shall be sworn to by the petitioner or by the petitioner's attorney upon information and belief, supported by the client's sworn notice of representation pursuant to 28 U.S.C. 1746, as set out in § 9.9(g). The Chief of the Asset Forfeiture and Money Laundering Section is delegated authority to amend the address of the official to whom petitions may be sent from time to time, as necessary, by publishing notice of the change of address in the Federal Register. Failure to publish a notice of change of address in the Federal Register shall not alter the authority of the Ruling Official to determine petitions for remission or mitigation nor the obligation of a petitioner to file a petition at the address provided in the notice of seizure. Failure to publish a notice of change of address in the Federal Register shall not be grounds for expanding the time for filing a petition for remission or mitigation under the regulations in this part.

(f) Agency investigation. Upon receipt of a petition, the seizing agency shall investigate the merits of the petition and prepare a written report containing the results of that investigation. This report shall be submitted to the Ruling Official for review and consideration.

(g) Ruling. Upon receipt of the petition and the agency report, the Ruling Official for the seizing agency shall review the petition and the report, and shall rule on the merits of the petition. No hearing shall be held.

(h) Petitions granted. If the Ruling Official grants a remission or mitigation of the forfeiture, a copy of the decision shall be mailed to the petitioner or, if represented by an attorney, to the petitioner's attorney. A copy shall also be sent to the United States Marshals Service or other property custodian. The written decision shall include the terms and conditions, if any, upon which the remission or mitigation is granted and the procedures the petitioner must follow to obtain release of the property or the monetary interest therein.

(i) Petitions denied. If the Ruling Official denies a petition, a copy of the decision shall be mailed to the petitioner or, if represented by an attorney, to the petitioner's attorney of record. A copy of the decision shall also be sent to the United States Marshals Service or other property custodian. The decision shall specify the reason that the petition was denied. The decision shall advise the petitioner that a request for reconsideration of the denial of the petition may be submitted to the Ruling Official in accordance with paragraph (j) of this section.

(j) Request for reconsideration.

(1) A request for reconsideration of the denial of the petition shall be considered if:

(i) It is postmarked or received by the office of the Ruling Official within ten (10) days from the receipt of the notice of denial of the petition by the petitioner; and

(ii) The request is based on information or evidence not previously considered that is material to the basis for the denial or presents a basis clearly demonstrating that the denial was erroneous.

(2) In no event shall a request for reconsideration be decided by the same Ruling Official who ruled on the original petition.

(3) Only one request for reconsideration of a denial of a petition shall be considered.

(k) Restoration of proceeds from sale.

(1) A petition for restoration of the proceeds from the sale of forfeited property, or for the appraised value of forfeited property when the forfeited property has been retained by or delivered to a government agency for official use, may be submitted by an owner or lienholder in cases in which the petitioner:

(i) Did not know of the seizure prior to the entry of a declaration of forfeiture; and

(ii) Could not reasonably have known of the seizure prior to the entry of a declaration of forfeiture.

(2) Such a petition shall be submitted pursuant to paragraphs (b) through (e) of this section within ninety (90) days of the date the property is sold or otherwise disposed of.

### § 9.4 Petitions in judicial forfeiture cases.

(a) Notice of seizure. The notice of seizure and intent to forfeit the property shall advise any persons who may have a present ownership interest in the property to submit their petitions for remission or mitigation within thirty (30) days of the date they receive the notice in order to facilitate processing. Petitions shall be considered any time after notice until such time as the forfeited property is placed in official use, sold, or otherwise disposed of according to law, except in cases involving petitions to restore property. A notice of seizure shall include the title of the Ruling Official and the mailing and street address of the official to whom petitions should be sent, the name of the agency seizing the property, an asset identifier number, and the district court docket number.

(b) Persons who may file. A petition for remission or mitigation must be filed by a petitioner as defined in § 9.2(o) or as prescribed in §§ 9.9 (g) and (h).

(c) Contents of petition.

(1) All petitions must include the following information in clear and concise terms:

(i) The name, address, and social security or other taxpayer identification number of the person claiming an interest in the seized property who is seeking remission or mitigation;

(ii) The name of the seizing agency, the asset identifier number, and the date and place of seizure;

(iii) The district court docket number;

(iv) A complete description of the property, including the address or legal description of real property, and make, model, and serial numbers of personal property, if any; and

(v) A description of the petitioner's interest in the property as owner, lienholder, or otherwise, supported by original or certified bills of sale, contracts, mortgages, deeds, or other documentary evidence.

(2) Any factual recitation or documentation of any type in a petition must be supported by a sworn affidavit.

(d) Releases. In addition to the content of the petition for remission or mitigation set forth in paragraph (c) of this section, the petitioner, upon request, also shall furnish the agency with an instrument executed by the titled or registered owner and any other known claimant of an interest in the property releasing the interest in such property.

(e) Filing petition with Department of Justice. A petition for remission or mitigation of a judicial forfeiture shall be addressed to the Attorney General; shall be sworn to by the petitioner or by the petitioner's attorney upon information and belief, supported by the client's sworn notice of representation pursuant to 28 U.S.C. 1746, as set forth in § 9.9(g); and shall be submitted to the United States Attorney for the district in which the judicial forfeiture proceedings are brought. A petitioner also shall submit a copy of the petition to the seizing agency in the judicial district in which the seizure occurred as specified in the notice of seizure, except in Drug Enforcement Administration cases, where the copy shall be submitted to Drug Enforcement Administration Headquarters, Office of Chief Counsel, P.O. Box 28356, Washington, D.C. 20038, or 700 Army Navy Drive, Arlington, VA 22202.

(f) Agency investigation and recommendation; United States Attorney's recommendation. Upon receipt of a petition, the United States Attorney shall direct the seizing agency to investigate the merits of the petition based on the information provided by the petitioner and the totality of the agency's investigation of the underlying basis for forfeiture. The agency shall submit to the United States Attorney a report of its investigation and its recommendation on whether the petition should be granted or denied. Upon receipt of the agency's report and recommendation, the United States Attorney shall forward to the Chief, Asset Forfeiture and Money Laundering Section, the petition, the seizing agency's report and recommendation, and the United States Attorney's recommendation on whether the petition should be granted or denied.

(g) Ruling. The Chief shall rule on the petition. No hearing shall be held. The Chief shall not rule on any petition in any case in which similar petition has been administratively denied by the seizing agency prior to the referral of the case to the United States Attorney for the institution of forfeiture proceedings.

(h) Petitions under Internal Revenue Service liquor laws. The Chief shall accept and consider petitions submitted in judicial forfeiture proceedings under the Internal Revenue Service liquor laws only prior to

the time a decree of forfeiture is entered. Thereafter, district courts have exclusive jurisdiction.

(i) Petitions granted. If the Chief grants a remission or mitigates the forfeiture, the Chief shall mail a copy of the decision to the petitioner or, if represented by an attorney, to the petitioner's attorney, the appropriate United States Attorney, the United States Marshals Service or other property custodian, and the appropriate seizing agency. The written decision shall include the terms and conditions, if any, upon which the remission or mitigation is granted and the procedures the petitioner must follow to obtain release of the property or the monetary interest therein. The Chief shall advise the petitioner or the petitioner's attorney to consult with the United States Attorney as to such terms and conditions. The United States Attorney shall confer with the seizing agency regarding the release and shall coordinate disposition of the property with that office and the United States Marshals Service or other property custodian.

(j) Petitions denied. If the Chief denies a petition, a copy of that decision shall be mailed to the petitioner, or if represented by an attorney, to the petitioner's attorney of record, to the appropriate United States Attorney, the United States Marshals Service or other property custodian, and to the appropriate seizing agency. The decision shall specify the reason that the petition was denied. The decision shall advise the petitioner that a request for reconsideration of the denial of the petition may be submitted to the Chief at the address provided in the decision, in accordance with paragraph (k) of this section.

(k) Request for reconsideration.

(1) A request for reconsideration of the denial shall be considered if:

(i) It is postmarked or received by the Asset Forfeiture and Money Laundering Section at the address contained in the decision denying the petition within ten (10) days from the receipt of the notice of denial of the petition by the petitioner; and

(ii) The request is based on information or evidence not previously considered that is material to the basis for the denial or presents a basis clearly demonstrating that the denial was erroneous. A copy of the request must be received by the appropriate United States Attorney within ten (10) days of the receipt of the denial by the petitioner.

(2) In no event shall a request for reconsideration be decided by the Ruling Official who ruled on the original petition.

(3) Only one request for reconsideration of a denial of a petition shall be considered.

(4) Upon receipt of the request for reconsideration of the denial of a petition, disposition of the property will be delayed pending notice of the decision at the request of the Chief. If the United States Attorney does not receive a copy of the request for reconsideration within the prescribed period, the deposition of the property may proceed.

(l) Restoration of Proceeds from sale.

(1) A petition for restoration of the proceeds from the sale of forfeited property, or for the appraised value of forfeited property when the forfeited property has been retained by or delivered to a government agency for official use, may be submitted by an owner or lienholder in cases in which the petitioner:

(i) Did not know of the seizure prior to the entry of a final order of forfeiture; and

(ii) Could not reasonably have known of the seizure prior to the entry of a final order of forfeiture.

(2) Such a petition must be submitted pursuant to paragraphs (b) through (e) of this section within ninety (90) days of the date the property was sold or otherwise disposed of.

### § 9.5 Criteria governing administrative and judicial remission and mitigation.

(a) Remission.

(1) The Ruling Official shall not grant remission of a forfeiture unless the petitioner establishes that:

(i) The petitioner has a valid, good faith, and legally cognizable interest in the seized property as owner or lienholder as defined in this part; and

(ii) The petitioner is innocent within the meaning of the innocent owner provisions of the applicable civil forfeiture statute, is a bona fide purchaser for value without cause to believe that the property was subject to forfeiture at the time of the purchase, or is one who held a legally cognizable interest in the seized property at the time of the violation underlying the forfeiture superior to that of the defendant within the meaning of the applicable criminal forfeiture statute, and is thereby entitled to recover his or her interest in the forfeited property by statute. (If the applicable civil forfeiture statute contains no innocent owner defense, the innocent owner provisions applicable to 21 U.S.C. 881(a)(4) shall apply.) Unless otherwise provided by statute, in the case of petitioners who acquired their interest in the property after the time of the violation underlying the forfeiture, the question of whether the petitioner had knowledge of the violation shall be determined as of the point in time when the interest in the property was acquired.

(2) The knowledge and responsibilities of petitioner's representative, agent, or employee in paragraph (a)(1)(ii) of this section are imputed to the petitioner where the representative, agent, or employee was acting in the course of his or her employment and in furtherance of the petitioner's business.

(3) The petitioner has the burden of establishing the basis for granting a petition for remission or mitigation of forfeited property, a restoration of proceeds of sale or appraised value of forfeited property, or a reconsideration of a denial of such a petition. Failure to provide information or documents and to submit to interviews, as requested, may result in a denial of the petition.

(4) The Ruling Official shall presume a valid forfeiture and shall not consider whether the evidence is sufficient to support the forfeiture.

(5) Willful, materially-false statements or information, made or furnished by the petitioner in support of a petition for remission or mitigation of forfeited property, the restoration of proceeds or appraised value of forfeited property, or the reconsideration of a denial of any such petition, shall be grounds for denial of such petition and possible prosecution for the filing of false statements.

(b) Mitigation.

(1) The Ruling Official may grant mitigation to a party not involved in the commission of the offense underlying forfeiture:

(i) Where the petitioner has not met the minimum conditions for remission, but the Ruling Official finds that some relief should be granted to avoid extreme hardship, and that return of the property

combined with imposition of monetary and/or other conditions of mitigation in lieu of a complete forfeiture will promote the interest of justice and will not diminish the deterrent effect of the law. Extenuating circumstances justifying such a finding include those circumstances that reduce the responsibility of the petitioner for knowledge of the illegal activity, knowledge of the criminal record of a user of the property, or failure to take reasonable steps to prevent the illegal use or acquisition by another for some reason, such as a reasonable fear of reprisal; or

(ii) Where the minimum standards for remission have been satisfied but the overall circumstances are such that, in the opinion of the Ruling Official, complete relief is not warranted.

(2) The Ruling Officials may in his or her discretion grant mitigation to a party involved in the commission of the offense underlying the forfeiture where certain mitigating factors exist, including, but not limited to: the lack of a prior record or evidence of similar criminal conduct; if the violation does not include drug distribution, manufacturing, or importation, the fact that the violator has taken steps, such as drug treatment, to prevent further criminal conduct; the fact that the violation was minimal and was not part of a larger criminal scheme; the fact that the violator has cooperated with federal, state, or local investigations relating to the criminal conduct underlying the forfeiture; or the fact that complete forfeiture of an asset is not necessary to achieve the legitimate purposes of forfeiture.

(3) Mitigation may take the form of a monetary condition or the imposition of other conditions relating to the continued use of the property, and the return of the property, in addition to the imposition of any other costs that would be chargeable as a condition to remission. This monetary condition is considered as an item of cost payable by the petitioner, and shall be deposited into the Assets Forfeiture Fund as an amount realized from forfeiture in accordance with the applicable statute. If the petitioner fails to accept the Ruling Official's mitigation decision or any of its conditions, or fails to pay the monetary amount within twenty (20) days of the receipt of the decision, the property shall be sold, and the monetary amount imposed and other costs chargeable as a condition to mitigation shall be subtracted from the proceeds of the sale before transmitting the remainder to the petitioner.

### § 9.6 Special rules for specific petitioners.

(a) General creditors. A general creditor may not be granted remission or mitigation of forfeiture unless he or she otherwise qualifies as petitioner under this part.

(b) Rival claimants. If the beneficial owner of the forfeited property and the owner of a security interest in the same property each files a petition, and if both petitions are found to be meritorious, the claims of the beneficial owner shall take precedence.

(c) Voluntary bailments. A petitioner who allows another to use his or her property without cost, and who is not in the business of lending money secured by property or of leasing or renting property for profit, shall be granted remission or mitigation of forfeiture in accordance with the provisions of § 9.5.

(d) Lessors. A person engaged in the business of leasing or renting real or personal property on a long-term basis with the right to sublease shall not be entitled to remission or mitigation of a forfeiture of such property unless the lessor can demonstrate compliance with all the requirements of § 9.5.

(e) Straw owners. A petition by any person who has acquired a property interest recognizable under this part, and who knew or had reason to believe that the interest was conveyed by the previous owner for the purpose of circumventing seizure, forfeiture, or the regulations in this part, shall be denied. A petition by a person who purchases or owns property for another who has a record for related crimes as defined in §

9.2(r), or a petition by a lienholder who knows or has reason to believe that the purchaser or owner of record is not the real purchaser or owner, shall be denied unless both the purchaser of record and the real purchaser or owner meet the requirements of § 9.5.

(f) Judgment creditors.

(1) A judgment creditor will be recognized as a lienholder if:

(i) The judgment was duly recorded before the seizure of the property for forfeiture;

(ii) Under applicable state or other local law, the judgment constitutes a valid lien on the property that attached to it before the seizure of the property for forfeiture;  and

(iii) The petitioner had no knowledge of the commission of any act or acts giving rise to the forfeiture at the time the judgment became a lien on the forfeited property.

(2) A judgment creditor will not be recognized as a lienholder if the property in question is not property of which the judgment debtor is entitled to claim ownership under applicable state or other local law (e.g., stolen property).  A judgment creditor is entitled under this part to no more than the amount of the judgment, exclusive of any interest, costs, or other fees including attorney's fees associated with the action that led to the judgment or its collection.

(3) A judgment creditor's lien must be registered in the district where the property is located if the judgment was obtained outside the district.

**§ 9.7 Terms and conditions of remission and mitigation.**

(a) Owners.

(1) An owner's interest in property that has been forfeited is represented by the property itself or by a monetary interest equivalent to that interest at the time of seizure.  Whether the property or a monetary equivalent will be remitted to an owner shall be determined at the discretion of the Ruling Official.

(2) If a civil judicial forfeiture action against the property is pending, release of the property must await an appropriate court order.

(3) Where the government sells or disposes of the property prior to the grant of the remission, the owner shall receive the proceeds of that sale, less any costs incurred by the government in the sale. The Ruling Official, at his or her discretion, may waive the deduction of costs and expenses incident to the forfeiture.

(4) Where the owner does not comply with the conditions imposed upon release of the property by the Ruling Official, the property shall be sold.  Following the sale, the proceeds shall be used to pay all costs of the forfeiture and disposition of the property, in addition to any monetary conditions imposed. The remaining balance shall be paid to the owner.

(b) Lienholders.

(1) When the forfeited property is to be retained for official use or transferred to a state or local law enforcement agency or foreign government pursuant to law, and remission or mitigation has been granted to a lienholder, the recipient of the property shall assure that:

(i) In the case of remission, the lien is satisfied as determined through the petition process;  or

(ii) In the case of mitigation, an amount equal to the net equity, less any monetary conditions imposed, is paid to the lienholder prior to the release of the property to the recipient agency of foreign government.

(2) When the forfeited property is not retained for official use or transferred to another agency or foreign government pursuant to law, the lienholder shall be notified by the Ruling Official of the right to select either of the following alternatives:

(i) Return of property.  The lienholder may obtain possession of the property after paying the United States, through the Ruling Official, the costs and expenses incident to the forfeiture, the amount, if any, by which the appraised value of the property exceeds the lienholder's net equity in the property, and any amount specified in the Ruling Official's decision as a condition to remit the property.  The Ruling Official, at his or her discretion, may waive costs and expenses incident to the forfeiture.  The Ruling Official shall forward a copy of the decision, a memorandum of disposition, and the original releases to the United States Marshals Service or other property custodian who shall thereafter release the property to the lienholder; or

(ii) Sale of Property and Payment to Lienholder.  Subject to the provisions of § 9.9(a), upon sale of the property, the lienholder may receive the payment of a monetary amount up to the sum of the lienholder's net equity, less the expenses and costs incident to the forfeiture and sale of the property, and any other monetary conditions imposed.  The Ruling Official, at his or her discretion, may waive costs and expenses incident to the forfeiture.

(3) If the lienholder does not notify the Ruling Official of the selection of one of the two options set forth in paragraph (b)(2) of this section within twenty (20) days of the receipt of notification, the Ruling Official shall direct the United States Marshal or other property custodian to sell the property and pay the lienholder an amount up to the net equity, less the costs and expenses incurred incident to the forfeiture and sale, and any monetary conditions imposed.  In the event a lienholder subsequently receives a payment of any kind on the debt owed for which he or she received payment as a result of the granting of remission or mitigation, the lienholder shall reimburse the Assets Forfeiture Fund to the extent of the payment received.

(4) Where the lienholder does not comply with the conditions imposed upon the release of the property, the property shall be sold after forfeiture.  From the proceeds of the sale, all costs incident to the forfeiture and sale shall first be deducted, and the balance up to the net equity, less any monetary conditions, shall be paid to the lienholder.

### § 9.8 Provisions applicable to victims.

The provisions of this section apply to victims of an offense underlying the forfeiture of property, or of a related offense, who do not have a present ownership interest in the forfeited property (or, in the case of multiple victims of an offense, who do not have a present ownership interest in the forfeited property that is clearly superior to that of other petitioner victims).  The provisions of this section apply only with respect to property forfeited pursuant to statutes that explicitly authorize restoration or remission of forfeited property to victims.  Victims who have a superior present legally cognizable ownership interest in forfeited property may file petitions, as other owners, subject to the regulations set forth in § 9.7(a).  The claims of such owner victims, like those of any other owners, shall have priority over the claims of any non-owner victims whose claims are recognized pursuant to this section.

(a) Qualification to file. A victim, as defined in § 9.2(v), of an offense that was the underlying basis for the criminal, civil, or administrative forfeiture of specific property, or a victim of a related offense, may be granted remission of the forfeiture of that property, if in addition to complying with the other applicable provisions of § 9.8, the victim satisfactorily demonstrates that:

(1) A pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture, and that the loss is supported by documentary evidence including invoices and receipts;

(2) The pecuniary loss is the direct result of the illegal acts and is not the result of otherwise lawful acts that were committed in the course of a criminal offense;

(3) The victim did not knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis of the forfeiture;

(4) The victim has not in fact been compensated for the wrongful loss of the property by the perpetrator or others;  and

(5) The victim does not have recourse reasonably available to other assets from which to obtain compensation for the wrongful loss of the property.

(b) Pecuniary loss. The amount of the pecuniary loss suffered by a victim for which remission may be granted is limited to the fair market value of the property of which the victim was deprived as of the date of the occurrence of the loss. No allowance shall be made for interest foregone or for collateral expenses incurred to recover lost property or to seek other recompense.

(c) Torts. A tort associated with illegal activity that formed the basis for the forfeiture shall not be a basis for remission, unless it constitutes the illegal activity itself, nor shall remission be granted for physical injuries to a petitioner or for damage to a petitioner's property.

(d) Denial of petition. In the exercise of his or her discretion, the Ruling Official may decline to grant remission where:

(1) There is substantial difficulty in calculating the pecuniary loss incurred by the victim or victims;

(2) The amount of the remission, if granted, would be small compared with the amount of expenses incurred by the government in determining whether to grant remission;  or

(3) The total number of victims is large and the monetary amount of the remission so small as to make its granting impractical.

(e) Pro rata basis. In granting remission to multiple victims pursuant to this section, the Ruling Official should generally grant remission on a pro rata basis to recognized victims when petitions cannot be granted in full due to the limited value of the forfeited property. However, the Ruling Official may consider, among others, the following factors in establishing appropriate priorities in individual cases:

(1) The specificity and reliability of the evidence establishing a loss;

(2) The fact that a particular victim is suffering an extreme financial hardship;

(3) The fact that a particular victim has cooperated with the government in the investigation related to the forfeiture or to a related persecution or civil action; and

(4) In the case of petitions filed by multiple victims of related offenses, the fact that a particular victim is a victim of the offense underlying the forfeiture.

(f) Reimbursement. Any petitioner granted remission pursuant to this part shall reimburse the Assets Forfeiture Fund for the amount received to the extent the individual later receives compensation for the loss of the property from any other source. The petitioner shall surrender the reimbursement upon payment from any secondary source.

(g) Claims of financial institution regulatory agencies. In cases involving property forfeitable under 18 U.S.C. 981(a)(1)(C) or (a)(1)(D), the Ruling Official may decline to grant a petition filed by a petitioner in whole or in part due to the lack of sufficient forfeitable funds to satisfy both the petition and claims of the financial institution regulatory agencies pursuant to 18 U.S.C. 981(e)(3) or (7). Generally, claims of financial institution regulatory agencies pursuant to 18 U.S.C. 981(e)(3) or (7) shall take priority over claims of victims.

## § 9.9 Miscellaneous Provisions.

(a) Priority of payment. Except where otherwise provided in this part, costs incurred by the United States Marshals Service and other agencies participating in the forfeiture that were incident to the forfeiture, sale, or other disposition of the property shall be deducted from the amount available for remission or mitigation. Such costs include, but are not limited to, court costs, storage costs, brokerage and other sales-related costs, the amount of any liens and associated costs paid by the government on the property, costs incurred in paying the ordinary and necessary expenses of a business seized for forfeiture, awards for information as authorized by statute, expenses of trustees or other assistants pursuant to paragraph (c) of this section, investigative or prosecutive costs specially incurred incident to the particular forfeiture, and costs incurred incident to the processing of the petition(s) for remission or mitigation. The remaining balance shall be available for remission or mitigation. The Ruling Official shall direct the distribution of the remaining balance in the following order or priority, except that the Ruling Official may exercise discretion in determining the priority between petitioners belonging to classes described in paragraphs (a)(3) and (4) of this section in exceptional circumstances:

(1) Owners;

(2) Lienholders;

(3) Federal financial institution regulatory agencies (pursuant to paragraph (e) of this section), not constituting owners or lienholders; and

(4) Victims not constituting owners or lienholders (pursuant to § 9.8).

(b) Sale or disposition of property prior to ruling. If forfeited property has been sold or otherwise disposed of prior to a ruling, the Ruling Official may grant relief in the form of a monetary amount. The amount realized by the sale of the property is presumed to be the value of the property. Monetary relief shall not be greater than the appraised value of the property at the time of seizure and shall not exceed the amount realized from the sale or other disposition. The proceeds of the sale shall be distributed as follows:

(1) Payment of the government's expenses incurred incident to the forfeiture and sale, including court costs and storage charges, if any;

(2) Payment to the petitioner of an amount up to his or her interest in the property;

(3) Payment to the Assets Forfeiture Fund of all other costs and expenses incident to the forfeiture;

(4) In the case of victims, payment of any amount up to the amount of his or her loss;  and

(5) Payment of the balance remaining, if any, to the Assets Forfeiture Fund.

(c) Trustees and other assistants.  In the exercise of his or her discretion, the Ruling Official, with the approval of the Asset Forfeiture and Money Laundering Section, may use the services of a trustee, other government official, or appointed contractors to notify potential petitioners, process petitions, and make recommendations to the Ruling Official on the distribution of property to petitioners. The expense for such assistance shall be paid out of the forfeited funds.

(d) Other agencies of the United States.  Where another agency of the United States is entitled to remission or mitigation of forfeited assets because of an interest that is recognizable under this part or is eligible for such transfer pursuant to 18 U.S.C. 981(e)(6), such agency shall request the transfer in writing, in addition to complying with any applicable provisions of §§ 9.3 through 9.5.  The decision to make such transfer shall be made in writing by the Ruling Official.

(e) Financial institution regulatory agencies.  A Ruling Official may direct the transfer of property under 18 U.S.C. 981(e) to certain federal financial institution regulatory agencies or an entity acting in their behalf, upon receipt of a written request, in lieu of ruling on a petition for remission or mitigation.

(f) Transfers to foreign governments.  A Ruling Official may decline to grant remission to any petitioner other than an owner or lienholder so that forfeited assets may be transferred to a foreign government pursuant to 18 U.S.C. 981(i)(1), 19 U.S.C. 1616a(c)(2), or 21 U.S.C. 881(e)(1)(E).

(g) Filing by attorneys.

(1) A petition for remission or mitigation may be filed by a petitioner or by his or her attorney or legal guardian.  If an attorney files on behalf of the petitioner, the petition must include a signed and sworn statement by the client-petitioner stating that:

(i) The attorney has the authority to represent the petitioner in this proceeding;

(ii) The petitioner has fully reviewed the petition;  and

(iii) The petition is truthful and accurate in every respect.

(2) Verbal notification of representation is not acceptable.  Responses and notification of rulings shall not be sent to an attorney claiming to represent a petitioner unless a written notice of representation is filed.  No extensions of time shall be granted due to delays in submission of the notice of representation.

(h) Consolidated petitions.  At the discretion of the Ruling Official in individual cases, a petition may be filed by one petitioner on behalf of other petitioners, provided the petitions are based on similar underlying facts, and the petitioner who files the petition has written authority to do so on behalf of the

other petitioners. This authority must be either expressed in documents giving the petitioner the authority to file petitions for remission, or reasonably implied from documents giving the petitioner express authority to file claims or lawsuits related to the course of conduct in question on behalf of these petitioners. An insurer or an administrator of an employee benefit plan, for example, which itself has standing to file a petition as a "victim" within the meaning of § 9.2(v), may also file a petition on behalf of its insured or plan beneficiaries for any claims they may have based on co-payments made to the perpetrator of the offense underlying the forfeiture or the perpetrator of a "related offense" within the meaning of § 9.2(s), if the authority to file claims or lawsuits is contained in the document or documents establishing the plan. Where such a petition is filed, any amounts granted as a remission must be transferred to the other petitioners, not the party filing the petition; although, in his or her discretion, the Ruling Official may use the actual petitioner as an intermediary for transferring the amounts authorized as a remission to the other petitioners.

## PETITION FOR REMISSION OR MITIGATION OF A CRIMINAL OR CIVIL FORFEITURE ACTION BY THE UNITED STATES DEPARTMENT OF JUSTICE

Note: This is a sample to assist potential petitioners. There is no legal form or format required for filing a petition. For more specific guidance on filing your petition, please consult Title 28, Code of Federal Regulations (C.F.R.) Section 9.4, which can be found at www.GPOaccess.gov.

To: The Attorney General of the United States

From: _____

_____

**(Name and address of petitioner or petitioner's attorney or representative)**

_____

**(Social Security Number / Taxpayer Identification Number of Petitioner)**

_____        _____

**Phone Number**                                      **Email Address**

I am petitioning for the remission of the property described below because I am (check all that apply):

__ a victim of the crime underlying the forfeiture of the forfeited property, or related offense (*complete Sections I, III, and V*);

__ an owner of the forfeited property (*complete Sections I, II and V*); and/or

__ a lienholder of the forfeited property (*complete Sections I, II, and V*).

*If you would like to petition for the mitigation of the property (return of part of your interest in the property or return upon the imposition of certain conditions) because of extreme hardship, you must also complete Section IV.*

## SECTION I

Description of Property *(include specific information such as make, model, or serial numbers if applicable)*:

_____

_____

_____

Seizing Agency:                          _____

Seizure Number/Asset ID Number:     _____

Date and Place of Seizure:              _____

**Court Case Information**

**Case Name:**      _____

**Case Number:**    _____

**Judicial District:**  _____

## SECTION II

Request for Remission - Owner or Lienholder

*This section should be completed by persons claiming an ownership interest in the property.*

I am requesting remission of this forfeiture pursuant to 28 C.F.R. § 9.5(a) because I have a valid, good faith, and legally cognizable interest in the seized property as owner or lienholder as described below:

_____
_____
_____
_____
_____
_____

*Provide supporting documentation such as bills of sale, retail installment agreements, contracts, certificates of title, or mortgages.*

AND

1. __ I am innocent within the meaning of the innocent owner standard as provided in Title 18 U.S. Code Section 983(d), because:

   __ I did not know of the conduct giving rise to the forfeiture; or

   __ Upon learning of the conduct giving rise to the forfeiture, I did all that reasonably could be expected under the circumstances to terminate such use of the property.

Please explain answer:        _____
_____

OR

2. __ I was a bona fide purchaser or seller of the forfeited property for value without cause to believe that the property was subject to forfeiture at the time of the offense underlying the forfeiture.

OR

3. __ I held a legally cognizable interest in the forfeited property at the time of the offense underlying the forfeiture superior to that of the defendant.

Please explain answer 2 or 3:    _____
_____
_____

## SECTION III

Non-Owner Victim's Explanation of Loss

*This section should be completed by victim petitioners only.*

___ I am requesting remission of this forfeiture because I am a victim of the criminal offense underlying the forfeiture of this property or am the victim of a related offense and I have suffered a pecuniary loss as a result of the offense that resulted in the forfeiture.

In the space provide below, please explain how you are a victim of the criminal offense, or a related offense, underlying the forfeiture of this property.  Be as specific as possible and provide details such as significant dates, names of individuals whom you dealt with, the amount of money you claim to have lost (including specifics of the transactions resulting in the loss), and any other information that you believe would be helpful in verifying your loss.  Please attach documentation of your loss (copies only), including receipts, invoices, bank statements, wire transfer confirmation statements and cancelled checks, to your petition.

**Do not attach your original documents to the petition.**

_____

_____

_____

_____

_____

_____

_____

_____

Total Amount of Pecuniary Loss Claimed: _____

**(Do not include collateral expenses such as attorney fees, investigative costs, lost wages. Do not include non-pecuniary harms such as pain and suffering, emotional distress, etc.)**

## SECTION IV

Petition for Mitigation of the Forfeiture

*This section need be completed only by owner and lienholder petitioners seeking alternative relief to complete remission of the property.*

In the event that the Ruling Official determines that I do not qualify for remission of the property, I hereby request mitigation of the forfeiture to avoid extreme hardship. In support of my request, I would like the Ruling Official to consider the following extenuating circumstances:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## SECTION V

Declaration

*The declaration must be completed by all petitioners unless the petitioner is represented by an attorney. The attorney may complete the declaration if the petitioner completes the sworn notice of representation below.*

I understand that the information that I am providing in support of my petition will be relied upon for purposes of determining my right to receive a petition award. I hereby declare under penalty of perjury under the laws of the United States of America that I believe that the information I am providing in support of my petition is true and correct. I further certify that any documents I have submitted in support of my petition consist of unaltered copies of documents that are in my possession.

_____

**Signature**

_____

**Print Name**

_____

**Date**

### Sworn Notice of Representation

*This section must be completed only by petitioners who are represented by an attorney and whose attorney has executed the declaration provided above.*

I have retained the attorney who has completed the Declaration in Section V to represent me in this matter. I have reviewed the foregoing petition and found that its contents are accurate to the best of my information and belief. I declare under penalty of perjury that the foregoing information is true and correct.

_____

**Signature**

_____

**Print Name**

_____

**Date**

**The completed original petition for remission and all supporting documentation must be submitted to the United States Attorney for the judicial district in which the forfeiture proceedings took place. A copy of the petition for remission should be submitted to the seizing agency in the judicial district in which the seizure occurred.**

ORIGIN ID:RDVA
BRIAN RICKERS
BRIAN RICKERS
DEPT OF JUSTICE/EOUSA
601 D STREET NW

(202) 252-7234

WASHINGTON, DC 20530 US
SIGN: BRIAN RICKERS
INV
PO UASOSDC1WASH

SHIP DATE: 21FEB24
ACTWGT: 0.10 LB
CAD: 100069937/INET14700

BILL SENDER

TO OON THIAN SENG AND LIONEL NAVIN NOE
MESSRS T S OON & PARTNERS
A-18-09 & A-18-10
MENARA UOA BANSAR, NO. 5 JALAN BANG
KUALA LUMPUR, 59000

REF: DOCUMENTS

DEPT:

INV:
NO:EEI 30.37(a)

TRK#  7752 6088 7377
[0430]

X4 KULA

AA
INTL PRIORITY

59000
-MY

KUL

**FedEx** Express®

J241024011002urr

583J6/194B/9AE3

---

After printing this label:

**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**

1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

**Warning:** Use only the printed original label for shipping purposes. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

LEGAL TERMS AND CONDITIONS OF FEDEX SHIPPING DEFINITIONS. On this Air Waybill, "we", "our", "us", and "FedEx" refer to Federal Express Corporation, its subsidiaries and branches and their respective employees, agents, and independent contractors. The terms "you" and "your" refer to the shipper, its employees, principals and agents. If your shipment originates outside the United States, your contract of carriage is with the FedEx subsidiary, branch or independent contractor who originally accepts the shipment from you. The term "package" means any container or envelope that is accepted by us for delivery, including any such items tendered by you utilizing our automated systems, meters, manifests or waybills. The term "shipment" means all packages which are tendered to and accepted by us on a single Air Waybill. AIR CARRIAGE NOTICE. For any international shipments by air, the Warsaw Convention, as amended, may be applicable. The Warsaw Convention, as amended, will then govern and in most cases limit FedEx's liability for loss, delay of, or damage to your shipment. The Warsaw Convention, as amended, limits FedEx's liability. For example in the U.S. liability is limited to $9.07 per pound (20$ per kilogram), unless a higher value for carriage is declared as described below and you pay any applicable supplementary charges. The interpretation and operation of the Warsaw Convention's liability limits may vary in each country. There are no specific stopping places which are agreed to and FedEx reserves the right to route the shipment in any way FedEx deems appropriate. ROAD TRANSPORT NOTICE. Shipments transported solely by road to or from a country which is a party to the Warsaw Convention or the Contract for the International Carriage of Goods by Road (the "CMR") are subject to the terms and conditions of the CMR, notwithstanding any other provision of this Air Waybill to the contrary. For those shipments transported solely by road, if a conflict arises between the provisions of the CMR and this Air Waybill, the terms of the CMR shall prevail. LIMITATION OF LIABILITY. If not governed by the Warsaw Convention, the CMR, or other international treaties, laws, other government regulations, orders, or requirements, FedEx's maximum liability for damage, loss, delay, shortage, mis-delivery, nondelivery, misinformation or failure to provide information in connection with your shipment is limited by this Agreement and as set out in the terms and conditions of the contract of carriage. Please refer to the contract of carriage set forth in the applicable FedEx Service Guide or its equivalent to determine the contractual limitation. FedEx does not provide cargo liability or all-risk insurance, but you may pay an additional charge for each additional U.S. $100 (or equivalent local currency for the country of origin) of declared value for carriage. If a higher value for carriage is declared and the additional charge is paid, FedEx's maximum liability will be the lesser of the declared value for carriage or your actual damages. LIABILITIES NOT ASSUMED. IN ANY EVENT, FEDEX WON'T BE LIABLE FOR ANY DAMAGES, WHETHER DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL IN EXCESS OF THE DECLARED VALUE FOR CARRIAGE (INCLUDING BUT NOT LIMITED TO LOSS OF INCOME OR PROFITS) OR THE ACTUAL VALUE OF THE SHIPMENT, IF LOWER, WHETHER OR NOT FEDEX HAD ANY KNOWLEDGE THAT SUCH DAMAGES MIGHT BE INCURRED. FedEx won't be liable for your acts or omissions, including but not limited to incorrect declaration of cargo, improper or insufficient packaging, securing, marking or addressing of the shipment, or for the acts or omissions of the recipient or anyone else with an interest in the shipment or violations by any party of the terms of this agreement. FedEx won't be liable for damage, loss, delay, shortage, mis-delivery, non-delivery, misinformation or failure to provide information in connection with shipments of cash, currency or other prohibited items or in instances beyond our control, such as acts of God, perils of the air, weather conditions, mechanical delays, acts of public enemies, war, strike, civil commotion, or acts or omissions of public authorities(including customs and health officials) with actual or apparent authority. NO WARRANTY. We make no warranties, express or implied. CLAIMS FOR LOSS, DAMAGE OR DELAY. ALL CLAIMS MUST BE MADE IN WRITING AND WITHIN STRICT TIME LIMITS. SEE OUR TARIFF, APPLICABLE FEDEX SERVICE GUIDE, OR STANDARD CONDITIONS OF CARRIAGE FOR DETAILS. The Warsaw Convention provides specific written claims procedures for damage, delay or non-delivery of your shipment. Moreover, the interpretation and operation of the Warsaw Convention's claims provisions may vary in each country. Refer to the Convention to determine the claims period for your shipment. The right to damages against us shall be extinguished unless an action is brought within two years, as set forth in the Convention. FedEx is not obligated to act on any claim until all transportation charges have been paid. The claim amount may not be deducted from the transportation charges. If the recipient accepts the shipment without noting any damage on the delivery record, FedEx will assume the shipment was delivered in good condition. In order for us to consider a claim for damage, the contents, original shipping carton and packing must be made available to us for inspection. MANDATORY LAW. Insofar as any provision contained or referred to in this Air Waybill may be contrary to any applicable international treaties, laws, government regulations, orders or requirements such provisions shall remain in effect as a part of our agreement to the extent that it is not overridden. The invalidity or unenforceability of any provisions shall not affect any other part of this Air Waybill. Unless otherwise indicated, FEDERAL EXPRESS CORPORATION, 2005 Corporate Avenue, Memphis, TN 38132, USA, is the first carrier of this shipment. Email address located at www.fedex.com.

ORIGIN ID:RDVA (202) 252-7234
Brian Rickers
DEPT OF JUSTICE/EOUSA
601 D Street NW

Washington, DC 20530
US

SHIP DATE: 21FEB24
ACTWGT: 0.10 LB
CAD: 100065937/INET14700

BILL SENDER
EINVIAT:

TO Oon Thian Seng and Lionel Navin Noe
Messrs T S Oon & Partners
A-18-09 & A-18-10
Menara UOA Bansar, No. 5 Jalan Bang
KUALA LUMPUR, 59000
MY

AA
INTL PRIORITY

REF: documents
DESC1:Correspondence/No Commercial Value
DESC2:
DESC3:
DESC4:
EEI:NO EEI 30.37(a)

TRK# 7752 6088 7377    Form 0430    PKG:ENV

6032283236200

(MY)

X4 KULA

AWB

**FedEx**
Express

J241024011020uv

These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), either in their original form or after being incorporated into other items, without first obtaining approval from the U.S. government or as otherwise authorized by U.S. law and regulations.

CTRY/TERR MFR: US
CARRIAGE VALUE: 0.00 USD
CUSTOMS VALUE: 0.00 USD

SIGN: Brian Rickers
T/C: S 44589904
D/T: R

The Montreal or Warsaw Convention may apply and will govern and in most cases limit the liability of Federal Express for loss or delay of or damage to your shipment. Subject to the conditions of the contract on the reverse.

FEDEX AWB COPY - PLEASE PLACE IN POUCH

After printing this label:
**FEDEX AWB COPY - PLEASE PLACE BEHIND CONSIGNEE COPY**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

FEDEX AWB COPY - PLEASE PLACE IN POUCH

ORIGIN ID:RDVA (202) 252-7234
Brian Rickers
DEPT OF JUSTICE/EOUSA
601 D Street NW

Washington, DC 20530
US

SHIP DATE: 21FEB24
ACTWGT: 0.10 LB
CAD: 100065937/INET4700

BILL SENDER
ENV/VAT:

TO Oon Thian Seng and Lionel Navin Noe
Messrs T S Oon & Partners
A-18-09 & A-18-10
Menara UOA Bansar, No. 5 Jalan Bang
KUALA LUMPUR, 59000
MY

6032283620 0

AA
INTL PRIORITY

TRK# 7752 6088 7377    Form
0430

(MY)

X4 KULA

AWB

PKG:ENV

REF: documents
DESC1:Correspondence/No Commercial Value
DESC2:
DESC3:
DESC4:
EEI: NO EEI 30.37(a)

These items are controlled by the U.S. Government and authorized for export only to the country of ultimate destination for use by the ultimate consignee or end-user(s) herein identified. They may not be resold, transferred, or otherwise disposed of, to any other country or to any person other than the authorized ultimate consignee or end-user(s), either in their original form or after being incorporated into other items, without first obtaining approval from the U.S. government or as otherwise authorized by U.S. law and regulations.

SIGN: Brian Rickers
T/C: $ 44459964
D/T: R

CRT/YER/T MFR: US
CARRIAGE VALUE: 0.00 USD
CUSTOMS VALUE: 0.00 USD

FedEx Express

J241024011020uv

The Montreal or Warsaw Convention may apply and will govern and in most cases limit the liability of Federal Express for loss or delay of or damage to your shipment. Subject to the conditions of the contract on the reverse.

After printing this label:
**FEDEX AWB COPY - PLEASE PLACE BEHIND CONSIGNEE COPY**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.



Shipment Receipt

**Address Information**

| Ship to: | Ship from: |
|---|---|
| Oon Thian Seng and Lionel Navin Noe | Brian Rickers |
| Messirs T S Oon & Partners | DEPT OF JUSTICE/EOUSA |
| A-18-09 & A-18-10 | 601 D Street NW |
| Menara UOA Bansar, No. 5 Jalan Bang | |
| KUALA LUMPUR, | Washington,  DC |
| 59000 | 20530 |
| MY | US |
| 60 3-2283 6200 | 2022527234 |

**Shipment Information:**
Tracking no.: 775260887377
Ship date: 02/21/2024
Estimated shipping charges:  18.86 USD

**Package Information**
Pricing option:
Service type: International Priority
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.10   LBS
Declared Value: 0.00   USD
Special Services:
Pickup/Drop-off: Use an already scheduled pickup at my location

**Billing Information:**
Bill transportation to: USA/SS/DC1/WASH-964
Bill duties/taxes/fees to: Recipient
Your reference:  documents
P.O. no.: USA/SS/DC1/WASH
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

March 04, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 775260887377

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Receptionist/Front Desk |
| **Signed for by:** | F.ANI | **Delivery Location:** | |
| **Service type:** | International Priority | | |
| **Special Handling:** | Deliver Weekday | | KUALA LUMPUR, |
| | | **Delivery date:** | Feb 26, 2024 14:18 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 775260887377 | **Ship Date:** | Feb 21, 2024 |
| | | **Weight:** | 0.1 LB/0.05 KG |

**Recipient:**                                                    **Shipper:**

KUALA LUMPUR, MY,                                     WASHINGTON, DC, US,

**Reference**                          documents
**Purchase Order**                USA/SS/DC1/WASH

Signature images are not available for display for shipments to this country.

Thank you for choosing FedEx